In the Matter of the Estate of Mary F. Lendecke, Deceased.

First Christian Church, a Wyoming corporation, Rev. R. L. Bell, Eula Jones, Myrtle Daugherty, Kenney Sailors Boys Ranch, Cora Joy, Inie Anderson, Rev. E. W. Harrison, Edith Mills, Tendis Gardner, Marie Alexander, Bertha Harris, Ella Hanks and Lena Totten,

*Objectors and Appellants,*

vs.

The Stock Growers National Bank of Cheyenne, Wyoming.

*Executor and Respondent,*

and

Minnie M. Parker, Jennie B. Hubbard, Albert E. Hubbard, Hubert Hubbard and Betty Jane Nickerson,

*Heirs at Law and Respondents.*

(No. 2818; September 23, 1958; 329 Pac. (2d) 819)

28

For the objectors and appellants, the cause was submitted upon the briefs of Lathrop, Lathrop & Tilker of Cheyenne, Wyoming, and oral argument by Carleton A. Lathrop.

For the heirs at law and respondents, the cause was submitted upon the brief and also oral argument of M. S. Reynolds of Cheyenne, Wyoming.

For the executor and respondent, the cause was submitted upon the brief of Loomis, Lazear & Wilson of Cheyenne, Wyoming.

Heard before Blume, C. J., and Harnsberger and Parker, JJ.

32

## OPINION

Mr. Justice Parker delivered the opinion of the court.

Mary F. Lendecke, a resident of Laramie County, Wyoming, died there May 10, 1956, leaving a will which, after providing for the payment of debts and expenses, stated in the second paragraph thereof:

"I give devise and bequeath, all of my estate, real, personal and mixed, wheresoever located, and of whatsoever consisting, to the following:

"First Christian Church, ......................................
    Cheyenne, Wyoming ....................................$12,000.00
"Wyoming Children's Home Society, ..........
    Cheyenne, Wyoming ..................................$ 1,000.00

           *    *    *    *    *

"Minnie M. Parker, Cheyenne, Wyoming....$ 1,000.00
"Jennie B. Hubbard, Cheyenne, Wyoming..$ 1,000.00

           *    *    *    *    *

"Hubert Hubbard, Cheyenne, Wyoming......$     1.00
"Betty Jane Hubbard, .........................................
    Cheyenne, Wyoming ..................................$     1.00"

(Twenty-two other beneficiaries — some institutions, some individuals — were listed as entitled to receive $1,000 each.) The remainder of the paragraph related to money owing testatrix, disposition of personal belongings, and funeral arrangements and services. The third paragraph appointed the Stock Growers National Bank of Cheyenne as executor. There was no residuary disposition.

The inventory and appraisement showed a total value of $125,853.68; the final accounting disclosed total assets of $137,608. The executor's final report and petition for distribution stated that the will did not provide for the disposition of the residue and remainder of the estate of the deceased, after payment of debts, expenses, and the amounts specified in the will,

and requested that it be set over to the heirs, share and share alike, under the laws of descent and distribution of the State of Wyoming; that is, Minnie M. Parker, sister, one-fourth; Jennie B. Hubbard, sister, one-fourth; Albert E. Hubbard, brother, one-fourth; and Hubert Hubbard and Betty Jane Nickerson, children of deceased's brother, Carl F. Hubbard, one-eighth each.

Fourteen of the beneficiaries named in the will objected to the executor's report and petition and in effect urged that under the terms of the will *all* of the residue descended to the beneficiaries therein named. Following a hearing on the executor's petition and the objections thereto, the trial court approved the executor's final report and petition for distribution, holding that the testatrix had provided in her will for the payment of the certain bequests listed therein and that the rest, residue, and remainder of said estate after the payment of said bequests, claims, taxes, costs of administration, and fees should be set over and distributed to the heirs at law, who were found to be as hereinabove noted. From this order the present appeal has been prosecuted.

The question before us is, What did the testatrix mean in the second paragraph of her will? To state the problem more specifically, Did she intend the beneficiaries named in the will to receive only the amounts which she specified, or did she by using "all" and related words intend that the named beneficiaries receive her *entire estate*—notwithstanding the recitation of an amount of money following the name of each beneficiary? A preliminary reading of the will's second paragraph discloses that the statements therein are in serious conflict. If we are to say that *all* of the estate passed to the beneficiaries named therein, then we

must as a corollary hold that the designation of the amounts listed constituted no limitations, but were in fact meaningless. On the other hand if we say that the *amounts* listed are controlling, we thereby render nugatory the testatrix's use of the word "all." The respective parties to the litigation have in their arguments solved the matter by electing to emphasize words which suit their purposes and by ignoring words which do not accord with the desired interpretation. We do not think that the problem can be solved so easily. Neither do we agree that the issues in this case can be determined solely by applying any one of the numerous general principles of law which have been called to our attention. For instance, one rule which at first would seem to have a bearing on the case is:

"* * *where the will does not dispose of all of the testator's property, that portion of his estate which is undisposed of goes as intestate property to the heirs * * *." 96 C.J.S. Wills § 1225, p. 1070.

However, this principle is of no assistance until the important question in the case has been answered: Did the testatrix effectively dispose of that part of her estate which was over and above the amounts listed as legacies? We cannot *assume* an answer to this question but must look to the applicable law and pertinent evidence for determination of the point.

The intention of the testatrix could, perhaps, have been ascertained had there been extrinsic evidence of her actions, statements, and the like; but unfortunately the record shows little of this except that both she and several of the beneficiaries were members of the First Christian Church of Cheyenne, Wyoming, in which she took an active interest. This information is of slight assistance. The case is one of first impression

to be determined in accordance with established rules of interpretation. As we have pointed out, the provisions of the Lendecke will giving *all* of the estate to named beneficiaries is wholly inconsistent with the listing by her of the amounts which each beneficiary was to receive. We must, therefore, ascertain whether one of these two provisions is superior to the other and prevails over that which is subordinate or whether these two contradictory provisions are of equal force so as to be irreconcilable, thereby causing the failure of all the bequests in the will.[1]

It seems to us evident that the testatrix's use of the word "all" constitutes a general provision. This has been so held in Jones v. Lewis, 70 Ohio App. 17, 44 N.E. 2d 735; In re Conner's Estate, 302 Pa. 534, 153 A. 730; In re Sarvers's Estate, 324 Pa. 349, 188 A. 141; wherein the testator in each instance purported to give "all" of certain property and in the same instrument made specific dispositions which were inconsistent. In each of these cases, the court made its determination in accordance with the general rule found at 95 C.J.S. Wills § 621, pp. 868, 873:

"* * * Where there is an inconsistency between a general and a specific provision, the latter will prevail. Those parts which are expressed with technical precision may be regarded as declaring the testator's intention with greater certainty than those which are less formal. By analogy to the rule of interpretation applied in the matter of description of land, where distance and direction must yield to monuments, as between an inaccuracy in stating the details of the meth-

---

[1]In re Jones' Estate, 72 Nev. 121, 296 P.2d 295; Reid v. Voorhees, 216 Ill. 236, 74 N.E. 804; Rugg v. Smith, 40 Ohio App. 101, 177 N.E. 784; 1 Jarman on Wills, 7th ed., p. 536 ff.

od of reaching a result and in the express statement of the result itself, the former is the more probable.

\* \* \* \* \*

"Where there is an inconsistency between a general and a specific provision, the latter will prevail \* \* \* regardless of the order in which it stands in the will, but especially where the specific follows the general."

If testatrix Lendecke intended *all* of her estate to go to the persons named by her as entitled to receive specific amounts, she gave no clear indication of it. She stated no formula or proportionate arrangement by which any overplus (after payment of stated legacies and expenses) should be divided between the persons whom she named. Any interpretation of her will so as to arbitrarily apportion such overplus among the persons named as beneficiaries would be an attempt to rewrite the will, substituting the ideas of the court for those of the testatrix. Jurists have often declined to supply words for a testatrix, especially where the will is clear and unambiguous. Slover v. Harris, Wyo., 314 P.2d 953.

The will in the present controversy contains inconsistent statements and we think is ambiguous. However, the ambiguity is not so serious that the contradictory portions of the testamentary disposition are irreconcilable. Such provisions if of equal weight would nullify each other and thereby cause the failure of all bequests in the will, but under recognized principles of interpretation by which the specific prevails over the general, testatrix Lendecke's delineation of the amounts to be received by each of the named persons and agencies makes it reasonably clear that she intended them to receive that much—no less and no more. The trial court's disposition of the case was in accord with the law as we view it.

Affirmed.