Ina Mae **LAWRENCE** et al., Appellants,

v.

Joe **LATCH** et al., Appellees.

No. 16880.

Court of Civil Appeals of Texas.

Fort Worth.

Feb. 2, 1968.

Rehearing Denied Feb. 23, 1968.

Gordon Wellborn & Rex, Houston, and Vaughan O. Stewart, Henderson, for appellants.

Marcus F. Vascocu, Longview, for appellees, Dora Talley, Clarence W. Talley and Linda Sue Talley.

Stone, Tilley, Parker, Snakard, Law & Brown, and G. W. Parker, Jr., Fort Worth, for appellee, Fort Worth National Bank.

Hollie G. McClain, Gilmer, Turner, Rodgers, Winn, Scurlock & Terry, and Frank J. Scurlock, Dallas, for appellees, Joe Latch et ux, Louis Ray Latch, and Bradford Zachry.

## OPINION

MASSEY, Chief Justice.

The suit in this case was brought on the theory that in 1946 there was a verbal testamentary contract to make mutual wills by and between John Edwards and his sister, Margie Edwards, both deceased. Pursuant to said contract, according to plaintiffs, each made a separate will in which material testamentary provisions were identical.

Under the 1946 wills of Margie Edwards and John Edwards each gave to the other all household furniture, fixtures, equipment, and personal effects such as watches, jewelry, clothing and the like; and the remainder of his or her property to the Fort Worth National Bank as Trustee and in trust for stated purposes, primarily that the bank would pay over to the survivor (Margie Edwards or John Edwards) during his or her lifetime all the net income produced by the trust estate. Each will provided that the trust should cease upon the survivor, whereupon the residue was to go to and vest in persons stated.

John Edwards died in 1953, and under his will his property passed as provided by his 1946 will. Margie Edwards died in 1962, whereupon the residuary provisions of the will of John Edwards became effective. However, between 1953 and 1962 Margie Edwards made new and different wills, and finally her last will of July 30, 1959. In the last will other and different provisions from those in her 1946 will were made relative to the inheritance and distribution of her estate, in diminishment of the proportions thereof provided by her 1946 will to pass to the plaintiffs upon the death of the survivor (Margie Edwards or John Edwards). In her last will the Fort Worth National Bank was named Executor. Material portions of her estate remain undistributed.

A comparison of the extent of participation in the estate of Margie Edwards under her 1946 will and her last will of 1959 is

shown by the following chart in which, by the letters "P" and "D" we have designated those who in the trial court were plaintiffs and defendants, respectively.

EXTENT OF PARTICIPATION OF THE
PLAINTIFFS AND DEFENDANTS
IN THE WILLS OF MISS EDWARDS
OF AUGUST 6, 1946 AND JULY 30, 1959

| | | Interest under 1946 will | Interest under 1959 will | |
| | | | Interest in residue | Special Bequests |
|---|---|---|---|---|
| P | Ina Mae Lawrence, niece | ⅑ | ¹⁄₁₅ | |
| P | Lois Cunningham, niece | ⅑ | ¹⁄₁₅ | |
| | George A. Edwards, nephew (he died in 1958) | ⅑ | | |
| P | Geo. Thomas Edwards, great nephew | Children of Geo. A. Edwards | ¹⁄₁₅ | |
| P | Steven Dale Edwards, great nephew | | | |
| P | Mrs. John Froelich, great niece | | | |
| D | Dora Talley, sister | ⅓ | ¹⁄₁₀ | $5,000.00 |
| D | Clarence W. Talley, nephew | ⅓ | ¹⁄₁₀ | |
| D | Linda Sue Talley, great niece | 0 | | $10,000.00 Sterling flatware |
| D | Josie Apsye Latch, no relation | 0 | ⅗ | Personal effects, diamonds, car |
| D | Louis Ray Latch, no relation | 0 | | $5,000.00 |
| D | Bradford Zachry, no relation | 0 | | $5,000.00 |

The last will of Margie Edwards contained the provision: "* * * and I do now here expressly provide and make it a condition precedent to the taking, vesting, receiving or enjoying of any property, benefit or thing whatsoever of this will, that no such devisee, legatee or beneficiary shall in any manner contest the probate thereof, or question or contest the same (will), or any part or clause thereof, in any judicial proceeding, and I further will and provide that, should any such devisee, legatee or beneficiary so contest or question, or in any manner aid in any such contest or questioning, he or she shall thereupon lose and forfeit all right to any benefit, and all right or title to any property or thing herein directly or indirectly devised or bequeathed to him or her, and every such right, title, property or thing is now by me expressly given, de-

vised and bequeathed to, and shall thereupon vest in, such of my devisees, legatees and beneficiaries herein mentioned in Section V above as do not so question or contest or give aid in such questioning or contesting of, this will or probate thereof, or any clause or provision thereof, in the same proportion as they now take under said Section V of this will."

Trial was to a jury. By answers to special issues *it refused to find* from a preponderance of the evidence that John and Margie Edwards executed their 1946 wills pursuant to any agreement between them to dispose of their property in the manner set out therein; or that on and prior to the time of their execution of their respective wills of 1946 they agreed that the survivor of them would leave all of his or her properties to the Edwards' heirs in the manner and in the proportions as set forth therein.

In the judgment of the trial court it was stated: "The Court concludes, as a matter of law, that the institution of this suit and its prosecution by the Plaintiffs renders it impossible for them to participate as beneficiaries under the will of Margie Edwards, deceased, of date July 30, 1959, * * * and by reason of the action and conduct of the Plaintiffs, they have forfeited all of their right, title and interest in and to the Estate of Margie Edwards, deceased."

Judgment was rendered in denial of all relief for which plaintiffs prayed, with the interest provided in their behalf by the last will of Margie Edwards forfeited and awarded to the defendants who were the residuary devisees (as indicated on the chart hereinabove) in proportions concerning which there is no dispute, and with the Executor directed to make its distribution in accord with the judgment and a prior interlocutory order made in the case.

From this judgment the plaintiffs perfected an appeal.

Affirmed.

The most material question posed by the appeal is whether the plaintiff/appellants forfeited their right to take under the last will of Margie Edwards. According to defendant/appellees their suit is one which contests the will and seeks to destroy it and that, under the manifest intention of said testatrix in her will, they were properly held to have forfeited their rights to inherit under it.

Apparent from the language found in Calvery v. Calvery, 122 Tex. 204, 55 S.W.2d 527 (1932) is the rule of law that a suit brought in good faith and upon probable cause to ascertain the intention of a testator and the extent of his devise, and then, in turn, *to enforce the terms of the will in accordance therewith,* will not be considered as an effort to vary the purpose and intention of the will, or to destroy it, and in consequence to thwart the testator's intent. In accord is First Methodist Episcopal Church South v. Anderson, 110 S.W.2d 1177 (Dallas, Tex.Civ.App., 1937, writ dism.) and Hodge v. Ellis, 268 S.W.2d 275 (Fort Worth, Tex.Civ.App., 1954, in part reversed on other grounds at 154 Tex. 341, 277 S.W.2d 900).

In Texas it does not appear to have been settled as to the law applicable in the event there is actually a contest of a will made in good faith and upon probable cause *where the object is to thwart the will and intent of the testator.* See Calvery v. Calvery opinion, especially at p. 530 of the South Western Reporter. However, if the question be of importance in the instant case we can assume that the trial court found that the plaintiff/appellants' contest was not made in good faith and upon probable cause. No issue determinative thereof was either submitted or requested. Texas Rules of Civil Procedure 279, "Submission of Issues". The matter could not be said to be resolved as a matter of law.

Informative is 125 A.L.R. 1135, Anno: "Validity and applicability of provision of will or trust instrument forfeiting share of contesting beneficiary as affected by probable cause and good faith in contest."

That the suit of plaintiff/appellants actually was a contest thereof brought to thwart the last will of the testatrix, Margie Edwards, is apparent when one takes cognizance of what would have been the effect thereon had the findings of the jury been in accord with their contentions. Had the jury found in accordance therewith plaintiff/appellants' inheritance would have been enhanced over that for which Margie Edwards made provisions in her last will, with a corresponding diminishment of the inheritance directed to be received by others. Indisputably, such testatrix' intent would have been thwarted had the jury so found, with the result that plaintiff/appellants would be entitled to inherit the proportionate amounts provided under her 1946 will.

■ The jury's findings, against the contention of the plaintiff/appellants, therefore brought into operation the provision of her last will which declared forfeiture of their right to take anything thereunder. Under the circumstances of the case there is no doubt that forfeiture was applicable and thus properly made a part of the judgment of the trial court. Although the attack made was upon the ability, legal qualification, and authority of Margie Edwards to make an enforceable last will because of what was asserted as a 1946 contract with John Edwards there would be no material difference (as applied to the question here posed) from a case where the contention was that she did not possess testamentary capacity at the time she executed her last will. In either case the attack upon the testatrix' ability to make the last will would amount to an attack upon the will itself.

Informative is 49 A.L.R.2d 198, Anno.: "What constitutes contest or attempt to defeat will within provision thereof forfeiting share of contesting beneficiary."

Other points of error compromise complaints because the trial court admitted testimony of Josie Latch, in part as applied to relations and transactions with Margie and John Edwards before the death of the latter, and in part as applied to relations and transactions with Margie Edwards thereafter. Objections to such testimony were that it was inhibited under provisions of Vernon's Ann.Tex.St. Art. 3716, the "Dead Man's Statute", and that it was immaterial and prejudicial in that it cast Mrs. Latch in a sympathetic position where the jury would and did seek to return findings which would enable her to inherit.

We have examined the whole record and concluded that even if the trial court erred as contended the jury's reception of Mrs. Latch's testimony was not shown to have been reasonably calculated to cause and to have probably caused the jury to return a verdict other than that which it would have returned had such testimony been excluded. Therefore, assuming that the court did err, the error would not have amounted to reversible error. T.R.C.P. 434.

On the matter of applicability of Art. 3716, the "Dead Man's Statute", we will state—without discussion of our reasons— that we are of the opinion that the same would have had application to Josie Latch's testimony had such testimony related to material transactions with Margie Edwards. However, it is to be noted from the record of such testimony that the following statements from plaintiff/appellants' brief correctly reflect the nature of Mrs. Latch's testimony, to-wit: "We feel that the foregoing detailed description of Josie Latch's friendship with John and Margie Edwards for some thirty years was elicited for the sole purpose of creating sympathy among the jury. Not one iota of Josie's testimony even remotely bears any semblance to evidence, direct or circumstantial, which could aid the Jury in determining whether or not John and Margie entered into an oral contract in 1946 and agreed to devise their property in a particular manner. * * *

"It is interesting to note that Josie Latch testified on cross-examination that she had never seen the 1946 wills of John and Margie, and further that she did not know that she was not mentioned in the 1946 wills.

Also, she never offered one word of testimony concerning any statements or acts by John or Margie which indicated that they had even written a will prior to John's death; * * *. In other words, Josie gave no testimony which shed any light one way or the other on the issue of a contract between John and Margie to write the mutual wills of 1946. All her testimony consisted of was repeated statements showing how nice she had been to the Edwards from the time she met them until the death of the survivor."

■ From the foregoing we believe it obvious that the testimony of Mrs. Latch simply did not relate to the material issue in the case and did not amount to testimony regarding a statement of transaction with a decedent upon any issue material to the disposition to be made. In other words her testimony was as to her want of knowledge of facts concerning any material issue, without such want of knowledge having been dependent upon any statement of either decedent. Mrs. Latch's testimony concerned matters about which there was no real dispute. These matters essentially related to the kindness and care rendered by Mrs. Latch to Miss Edwards prior to her death. There was evidence from other qualified persons which verified the fact of such service over a long period of time including her last illness and death.

It was in relation to the detailed evidence which Mrs. Latch was permitted to give concerning the forming of her acquaintance with John and Margie Edwards and her relationship with them prior to the time John Edwards died, and further and in particular her relationship with Margie Edwards thereafter and until the time Margie Edwards died, that plaintiff/appellants level their complaint of prejudicial error resulting from admission of immaterial and irrelevant testimony from Mrs. Latch.

Their brief expresses their complaint thus: "If we accept Josie's testimony as the truth, then she proved a mutual admiration between herself and Margie—she gave her services to Margie and Margie reciprocated with gifts. Does the fact that a close friendship existed from 1953 until April of 1962, give us any hint, directly or circumstantially, as to why the 1946 wills were written as they were? We must know the intention in 1946; there is no issue on Margie's intention after John's death.

"Under the ruling of the trial Court the jury had to think that it was important to consider Josie's testimony about her transaction with Margie after John's death. They did not know that upon John's death, if there was a contract, then it became irrevocable, and regardless of what Margie did then, she could not get out of her 1946 agreement. They must have thought that it was their duty to consider which of the parties stayed with Margie at the hospital during her last illness and which did not show up. They must have thought it important that Margie started giving Josie gifts after John's death. They did not know that Margie had no equitable right to change her mind after John's death if there was a contract.

"We know, and the jury knew, that after John's death it became Margie's intention for Josie Latch to get the bulk of the Edwards' property. The subsequent wills written after John died showed the jury this; the gifts consisting of cash, automobiles and realty showed the jury this. Margie's will of July 30, 1959, was the best evidence the jury had before them as to whom Margie intended her property should pass at her death. The issues submitted to the jury did not ask about Margie's intention after John's death. Yet the jury had heard this evidence and assumed that it was competent and that they must consider it. It tells them nothing about the existence or nonexistence of a 1946 contract, but it does tell them that in the end Margie favored Josie over her own blood relatives. The jury had to know that they could not carry out Margie's final intention without finding that no contract was consummated in 1946."

We are inclined to agree that there was considerable amount of testimony adduced from Mrs. Latch which was immaterial and without relevance to the issue on trial, though we have some doubt of the competence of objections made thereto. In any event the decisive question is whether its reception of the evidence so prejudiced the jury that it returned a verdict other than that which it probably would have returned but for the evidence. To say that it did, in this case, would require us to hold such as a matter of law. This we decline to do. In our opinion the error, if any, in admitting the evidence complained of was harmless within the meaning of T.R.C.P. 434.

Judgment affirmed.