Ina Mae **LAWRENCE** et al., Petitioners,

v.

Joe **LATCH** et al., Respondents.

No. B–827.

Supreme Court of Texas.

July 24, 1968.

Rehearing Denied Oct. 2, 1968.

Gordon Wellborn & Rex Houston, Henderson, for petitioners.

Marcus F. Vascocu, Longview, Stone, Tilley, Parker, Snakard, Law & Brown, Fort Worth, Hollie G. McClain, Gilmer,

Turner, Rodgers, Winn, Scurlock & Terry, Frank J. Scurlock, Dallas, for respondents.

NORVELL, Justice.

This is a suit brought by plaintiffs, Ina Mae Lawrence and four others, who were named among the devisees in the will of John K. Edwards and a similar will made by Margie Edwards on August 6, 1946,[1] against Joe Latch, his wife, Josie Latch, and five other individuals who were devisees under a will executed by Margie Edwards on July 30, 1959. The Fort Worth National Bank in its capacity as Independent Executor of the Estate of Margie Edwards, deceased, was also named as a party defendant.

John and Margie Edwards were brother and sister and it was the contention of plaintiffs that the two 1946 wills were based upon an oral contract between John and Margie Edwards. Cf. Nesbett v. Nesbett, 428 S.W.2d 663 (Tex.Sup.1968); Meyer v. Texas National Bank of Commerce of Houston, 424 S.W.2d 417 (Tex. Sup.1968); Kirk v. Beard, 162 Tex. 144, 345 S.W.2d 267 (1961); and Weidner v. Crowther, 157 Tex. 240, 301 S.W.2d 621 (1957). The plaintiffs failed to prove to the satisfaction of the jury that the 1946 wills were based upon a contract.[2]

1. In August 1946, John K. Edwards executed a will providing that in the event his sister, Margie Edwards, should survive him, all of his property remaining after payment of debts, with the exception of certain household furnishings and personal property bequeathed directly to his sister, should go to the Fort Worth National Bank as Trustee with instructions to pay over to said Margie Edwards the net income derived therefrom. The will provided that the trust should terminate upon the death of Margie Edwards and the property then held by the Trustee should vest in certain named individuals, some of whom or their successors in interest are plaintiffs.

Likewise on August 6, 1946, Margie Edwards executed a will in similar terms providing that if her brother, John K. Edwards, should survive her, he should be the beneficiary of a trust of which the Fort Worth National Bank should be Trustee. The will devised all her property to such Trustee with the exception of certain household furnishings and personal effects which she bequeathed directly to her brother. The ultimate beneficiaries of this will, those taking after the termination of the trust upon the death of John K. Edwards, were identical with those named in the will of John K. Edwards. There was nothing stated in either will indicating that such wills were contractual in nature.

2. These issues and the jury's answers thereto were as follows:

"Special Issue No. 1. Do you find from a preponderance of the evidence that John K. Edwards and Margie Edwards executed their wills of August 6, 1946, pursuant to an agreement be-

The trial court rendered judgment against plaintiffs upon their contractual theory and then concluded as a matter of law that the institution of the suit and prosecution thereof rendered plaintiffs ineligible to take anything under the 1959 will because the *in terrorem* clause thereof provided that any beneficiary named therein would be disqualified from taking thereunder if he disputed the will.[3]

The Court of Civil Appeals affirmed. 424 S.W.2d 260. We reverse the judgments of the trial court and the Court of Civil Appeals and remand the cause for another trial because of the error of the trial court in admitting the testimony of Josie Latch, who, as the wife of Joe Latch, was made a party to this suit. The Court of Civil Appeals, while recognizing that such testimony was improperly admitted, concluded that such error was harmless. We are unable to agree with this conclusion.

Although the wills did not so recite, there was evidence that the 1946 wills were based upon an agreement between John and Margie Edwards. The issue that the jury was called upon to decide was whether or not John and Margie Ed-

wards had made an agreement that the survivor of them would leave their properties to those persons designated in the 1946 wills, i.e., the Edwards heirs. Josie Latch was not named in the 1946 wills but received ⅗ of the residuary estate under the 1959 will as well as an automobile, some diamonds and various personal effects.

Among numerous objections made by plaintiffs to Mrs. Latch's testimony was one asserting that testimony as to transactions between Mrs. Latch and Margie Edwards which took place after the death of John Edwards could have no probative force in determining whether or not the 1946 wills were based upon an oral agreement.[4]

After this objection was overruled, Mrs. Latch testified at considerable length and the opinion of the Court of Civil Appeals indicates the tenor of her testimony. The purport of it was that she was a devoted friend to Margie Edwards and cared for her during her last illness; that she helped lift Margie Edwards when she was in a hospital, combed her hair, fixed her face, manicured her nails, gave her enemas, and "gave her attention that anyone could that

tween them to dispose of their property in the manner set out in such wills? Answer: No.
"Specific Issue No. 2. Do you find from a preponderance of the evidence that John K. Edwards and Margie Edwards on or about August 6, 1946, and prior to the execution of their respective wills of August 6, 1946, agreed that the survivor of them would leave all of his or her properties to the Edwards' heirs in the manner and in the proportions as set forth in the wills of August 6, 1946? Answer: No."

3. For example, the interest of the plaintiff, Ina Mae Lawrence, was reduced from ⅑ provided for in the 1946 will to ¹⁄₁₅ under the 1959 will. See table contained in the opinion of the Court of Civil Appeals, 424 S.W.2d 262.

4. The objection was stated as follows:
   Counsel: "Now, Your Honor, at this point there is clearly now a dividing line in counsel's questions between before John's death and after his death.

"Now matters, or transactions between her and Margie Edwards after John Edwards' death would have to be completely irrelevant and immaterial when they are tested in the light of the issues before the Court, because Margie's feeling for Mrs. Latch after John Edwards' death could not, as a matter of law, have any probative force on the question of what was John and Margie's intentions in 1946. And I think there is a clear dividing line between his death and after."

Shortly thereafter, the following colloquy occurred between counsel and the court:
   Counsel: "Your Honor, now I assume it's still understood, now, that all of these conversations of Mrs. Latch with Margie after the date of John's death are completely irrelevant and immaterial to the issue before the Court?"
   The Court: "It is understood you have that objection."

went along with love," and that during the five months while Margie Edwards was in the Latch home immediately before her death, none of the plaintiffs in this suit came to see her, nor called to see how she was getting along. We need not give further examples as the above fairly illustrates the course of Mrs. Latch's testimony. It was plainly immaterial to the contract issue and clearly prejudicial to plaintiffs. The course of the trial following the overruling of the objection above mentioned suggests that the point at issue was not whether John and Margie Edwards had made a contract in 1946, but rather who in justice and right should have Margie Edwards' property after her death,—the faithful and loving friend or the neglectful and careless relatives. This view is further strengthened by the circumstance that the plaintiffs without waiving their objection but in an attempt to offset the prejudicial effect of Mrs. Latch's testimony, sought to show that Mrs. Latch had been paid or given substantial sums of money and various valuable items of personal property by Margie Edwards before her death.

■ While we may agree with defendants that the rules of evidence have been somewhat relaxed when one is attempting to rebut an assertion that two persons now dead have made an oral agreement to make wills containing certain dispositions of property, this does not mean that the rules of relevancy are no longer applicable. Admittedly, the fact that thereafter Margie Edwards executed a will or wills after 1946 is some evidence that she had not made a contract not to change her will of that year. But, Mrs. Latch's testimony does not strengthen or aid that inference. Her testimony in no way throws any light upon the intentions held by the brother and sister relating to the disposition of their property in 1946.

5. See, Calvery et al. v. Calvery et al., 122 Tex. 204, 55 S.W.2d 527 (1932); Re Estate of Cocklin (Cocklin v. Watkins), 236 Iowa 98, 17 N.W.2d 129, 157 A.L.R. 584 (1945); Clark v. Hefley et

■ In our opinion, the improper admission of Mrs. Latch's testimony was prejudicial to plaintiffs and was an error amounting to such a denial of plaintiffs' rights as was reasonably calculated to and probably did cause the rendition of an improper judgment in the case. Rule 503, Texas Rules of Civil Procedure.

While we have been cited to and examined a number of cases relating to the effect of an *in terrorem* clause similar to that contained in Margie Edwards' 1959 will,[5] this matter would have to be passed upon only if plaintiffs were unsuccessful in their suit to establish a contract. Since the judgment against them on this issue is herewith reversed, we need not and do not pass upon the validity of defendants' contention nor the statements of the Court of Civil Appeals with reference thereto.

Judgment entered as hereinabove indicated.

Reversed and remanded.

al., 34 Tenn.App. 389, 238 S.W.2d 513 (1950); and In re Miller's Estate, 212 Cal.App.2d 284, 27 Cal.Rptr. 909 (1963); 230 Cal.App.2d 888, 41 Cal.Rptr. 410 (1964).