Richard **HAMMER** and John L. **Byrtus**, as Executors of the Estate of Joe Snoddy, Deceased, Appellants (Defendants below),

v.

Ruth G. **ATCHISON**, Executrix of the Estate of Leone G. Snoddy, Deceased, Appellee (Plaintiff below) (two cases).

Nos. 4450, 4451.

Supreme Court of Wyoming.

June 4, 1975.

Lawrence A. Yonkee and Tom C. Toner, Redle, Yonkee & Arney, Sheridan, for appellants.

Henry A. Burgess, Sheridan, for appellee.

Before RAPER, THOMAS and ROSE, JJ.

RAPER, Justice.

This appeal presents interrelated questions in the construction of a written antenuptial agreement with respect to a will subsequently made and the construction of a will with respect to the antenuptial agreement. There are no questions concerning the validity of either document.

On December 9, 1966, Joe Snoddy and Leone Georgen, also known as Leona Georgen entered into a prenuptial agreement. They were married less than a week later. On November 22, 1968, Joe Snoddy executed a will. He died on December 19, 1970, and his will was regularly admitted to probate. The appeal is taken from a judgment in her favor entered in a civil action by Leona G. Snoddy against the executors of her deceased husband's estate to recover one-fourth of the net estate pursuant to the provisions of a prenuptial agreement, in writing, for which she had properly filed claim; the executors appeal. Appeal is also before the court by the executors of the Joe Snoddy estate from a judgment and order entered in the probate court ordering the executors to pay to Leona G. Snoddy $101,400.00 in addition to one-fourth of the net estate of Joe Snoddy.

The cases are consolidated. Leona Snoddy has since died and her executrix has been substituted as a party in her stead in the civil action.

After introductory recitations, the antenuptial agreement, with Joe Snoddy as first party and Leona Georgen as second party, is in its pertinent terms as follows:

### "I.

"First Party shall execute a codicil to his Last Will and Testament, dated April 16, 1966, or execute a new Will, and in said Codicil or Will or any other Will executed by First Party, First Party shall give, devise and bequeath unto Second Party one fourth (¼) of First Party's net estate which term 'net estate' shall mean the residue remaining after deduction of all valid debts and funeral and administration expenses but before the deduction for estate or inheritance taxes. However, Second Party shall be obligated to pay out of the said one-fourth share of First Party's estate which Second Party shall receive any and all inheritance taxes which are determined to be chargeable against said one-fourth share. First Party's legal representatives shall have the authority to deduct any such inheritance taxes which may be determined chargeable against said one-fourth share from said one-fourth share. First party agrees to die testate.

\*   \*   \*   \*   \*   \*

### "IV.

"Except as herein set forth, each party waives, discharges and releases any and all claims and rights that he or she may acquire by reason of the marriage:

"(a) To share in the estate of the other party upon the latter's death by way of dower, curtesy, widow's allowance, Statutory allowance or distribution in intestacy; and

"(b) To elect to take against the other Party's last Will and Testament under any Statutes, now or hereafter in force, of any State of the United States of America, or any other State or Nation in which the deceased Party may have property at the time of death or in which the Parties or either of them may reside;

"(c) To act as Executor or Administrator of the other Party's estate. Neither Party, however, shall be disqualified by the terms hereof to serve and act as Executor or Executrix of the other's estate if so designated.

### "V.

"Except as herein set forth, each Party hereby accepts the provisions of any Last Will and Testament which has been or may hereafter be made for the survivor of either of them in full discharge, settlement and satisfaction of any and all other right, title and interest, which either might acquire in the estate and property of the other, but for such testamentary provisions and the provisions of this Agreement. Nothing herein shall be construed to prevent either of said parties from accepting or receiving any benefit, gift, devise or bequest which the other may freely and voluntarily choose to make in favor of him or her by Last Will and Testament, Codicil or other testamentary instrument."

The will of Joe Snoddy in its applicable parts is as follows:

"FIRST: I direct the payment of all my just debts, expenses of last illness, my funeral expenses, the expenses of administering my estate and all State Inheritance and Federal Estate Taxes, payment of which is not otherwise provided for.

"SECOND: I give and bequeath to my wife, Leone G. Snoddy, also known as Leona G. Snoddy, the sum of One Hundred Thousand Dollars ($100,000.-00) and I request that said sum be distributed and paid over to said Leone G. Snoddy just as soon as the District Court having jurisdiction over my estate will permit such distribution.

"THIRD: I further direct that the Executors of my estate pay to my wife, Leone G. Snoddy, the sum of Two Hundred Dollars ($200.00) per month, retroactive to the month of my death, said payment to continue each month until the legacy provided for in Paragraph SECOND of this Will has been fully paid. Upon payment of said legacy, said monthly allowance will terminate and no further allowance be paid. I do direct my Executors, however, from the residue of my estate, to pay any Inheritance Tax or other tax that may be chargeable against the legacy which I leave for my wife, Leone G. Snoddy.

\*  \*  \*  \*  \*  \*

"FIFTH: I direct that all testamentary expenses and all transfer estate and debt taxes, whether Federal, State, Municipal or Inheritance and all other taxes of that general nature which shall become payable by reason of my death, shall be paid out of the principal of my residuary estate, whether assessed in respect to property owned by me at the time of my death, or in respect of any other property included in the computation of such taxes."

The total amount of the estate was $902,845.30 with expected expenses of administration and taxes deducted, to leave a net estate of $788,044.43, one-fourth of which would be $197,011.10. Under the view taken by the appellee and which was directed by the trial court, the debt created by the prenuptial agreement would be satisfied followed by payment of the $101,400.00 bequeathed by the will. Under the view of appellants, the $101,400.00 legacy should be credited against the obligation to devise to Leona Snoddy one-fourth of his net estate. The $1,400.00 in this figure is the total of the $200.00 monthly payments made under the THIRD direction of the will, before payment of the $100,000.00. The total legacy has been paid. No testimony was taken prior to decision.

The appellants advocate by paraphrasing from 6 Bowe-Parker, Page on Wills, § 57.-11, p. 352, the following rule:

"If the testator's obligation is one which by its terms is required to be satisfied by a legacy, a legacy in the will although of less value will be presumed to be a partial satisfaction of a contractual obligation."

■ Appellants rely on Slover v. Harris, Wyo.1957, 314 P.2d 953, in which the testator was childless and had raised the plaintiffs like his own sons. They lived and worked on the testator's ranch without compensation from the time that they were youngsters. By will, the plaintiffs were left only a life estate in his property. First asserting an agreement that they were to receive the fee by oral promise of the testator, for services, for alternate relief, they claimed compensation for services under a quantum meruit theory. This court held that there was no oral contract and that plaintiffs would have to elect between an implied contract in quantum meruit and the life estate under the will. At page 964 of the opinion, the court said:

" \* \* \* It is true that the courts generally seem to be inclined to hold that a devise or legacy shall not be construed to be in satisfaction of an indebtedness, unless that is clear.[1] Thus it has been held that when the legacy is smaller in amount than the indebtedness, \* \* \* it will not be deemed to be in satisfaction thereof. \* \* \* However, in the case at bar, we have one factor not frequently found in cases. The theory of the plaintiffs is that the services of plaintiffs were to be compensated by a provision in a last will and testament. The evidence in the case is to the same effect. \* \* \* That indicates that the plaintiffs were to be compensated by a provision in a will, and even though compensated inadequately, the intention

---

1. This is a recognition of the direction we take.

clearly was that it should be in satisfaction at least pro tanto. * * *"

The appellants draw an analogy between the factual situation in Slover and the factual situation in this case on the following bases: The testator in Slover was indebted to the plaintiff because of services under an implied contract; the testator in this case, Joe Snoddy, was indebted to the plaintiff because of an express contract; and in Slover it was held that there was a contractual obligation to be fulfilled by a testamentary gift and the same is true here. Appellants see no difference in contracts and contend that the proposed rule applies to all contracts to be satisfied by testamentary means. Other cases cited by appellants involve service contracts.

Appellants argue in other areas which we have considered but conclude are inapplicable.

■ We believe and hold that the correct rule is found in Annotation, Spouse's right to take under other spouse's will as affected by antenuptial or postnuptial agreement or property settlement, 53 A.L. R.2d 475, 477:

"It has been quite generally recognized that in the absence of statutory provision to the contrary the intention of the testator governs in a determination as to the right of a surviving spouse to take under the deceased spouse's will notwithstanding the existence of an antenuptial agreement or property settlement, and that, unless a contrary intention is indicated by the instruments, such an agreement or settlement does not prevent the survivor from taking under the will of the deceased spouse."

This rule is derived from principles found in the following cases: Bartle v. Bartle, Colo.1950, 121 Colo. 388, 216 P.2d 649 (dicta); Taft v. Taft, 1895, 163 Mass. 467, 40 N.E. 860; Berg v. Berg, 1937, 201 Minn. 179, 275 N.W. 836; In re Shirley's Will, 1932, 207 Wis. 549, 242 N.W. 207, 86 A.L.R. 1, and Bowen v. Bowen, 1877, 34 Ohio St. 164.

6 Bowe-Parker, Page on Wills, § 57.12, p. 354, acknowledges the law is not hidebound to the rule cited by appellants:

"If testator's intention is manifest from the terms of the will, when read in the light of the surrounding circumstances, either by express provisions or through fair and reasonable construction, that a legacy is given in satisfaction of a debt on the one hand, or that it is given in addition to the debt on the other, full effect will be given to testator's intention; although, in case the legacy is given as a satisfaction of the debt, the creditor has an election to accept the legacy as satisfaction of the debt or to renounce the legacy and to enforce the debt. The question is, therefore, one of testator's intention as ascertained by the general rules of construction. * * *"

■ We have no statutory provision to the contrary and the inflexibility of the rule advocated by appellants would leave no room to carry out a testator's intent when the facts persuade us otherwise. The rule suggested by appellants is a mere rule of law which must yield to the intent of the testator. In the consideration of a will, the intention of the testator must govern. In re Gilchrist's Estate, 1936, 50 Wyo. 153, 180, 60 P.2d 364. Nor can we write into a will something that does not appear there. Percival v. Percival, Wyo.1974, 526 P.2d 342, 343.

An antenuptial agreement has been long favored in Wyoming as a family settlement of their affairs. In re Borton's Estate, Wyo.1964, 393 P.2d 808, 815. It ought to be carried into effect as expressed in its four corners. Our purpose in this case, then, is to construe the agreement in relation to the will and keep them harmonious with each other.

We can distinguish Slover relied upon by appellants quite easily. The contracts are dissimilar. There is no way to attach to the implied contract in quantum meruit and an intent to satisfy a debt by testamen-

tary gift, the following provision found in Article V of the antenuptial agreement here:

> "* * * Nothing herein shall be construed to prevent either of said parties from accepting or receiving any benefit, gift, devise or bequest which the other may freely and voluntarily choose to make in favor of him or her by Last Will and Testament, Codicil or other testamentary instrument."

The language of the bequest of $100,000.00 denotes gift which testator says, "I give * * * to my wife * * *." We must give meaning to this provision. It is not idle language.

If the testator here wanted the $100,000.-00 and the $200.00 per month applied to the one-quarter (¼) of his estate, it would have been simple to so express that desire in his will. When the contract was entered into before execution of the will and testator nevertheless provides for his spouse in that will, he could not have intended that the will be affected by the contract and the survivor deprived of the right to take under the will. There is no way to identify the legacies in the will with a satisfaction or partial satisfaction of the obligation created by the agreement. We note that both documents were apparently drawn by the same skilled and experienced draftsman so we cannot opine that decedent failed to advise him of the existence of the contract when putting together the will.

This is further borne out by the prenuptial agreement; the bride-to-be was to pay inheritance taxes from the one-quarter (¼) share agreed to be paid. The will provided that taxes be paid from the residue of the estate. There is no way to tie the legacies to the contractual terms.

The prenuptial agreement created a debt payable under FIRST of the will: "I direct the payment of *all* my just debts, * * *." (Emphasis supplied.) While Bowen v. Bowen, supra, 34 Ohio St. p. 185, is an old case, its reasoning is sound, when it says:

> "* * * By his will, he directed that 'all his just debts of every kind be first paid.' We must assume that this claim of his wife was in the testator's mind when he executed the will, hence, this direction affords a strong, if not conclusive indication, that he intended she should have both payment of her claim under the settlement and the provision made for her in the will. * * *

> "It would indeed be hazardous to say that the testator, when he gave this direction, did not intend to include the debt of his wife, which was, by far, the largest outstanding and undisputed debt against him or his estate.

> "But we need not turn the case on this point alone, as all the authorities agree, that a simple direction to pay debts is an ingredient to be considered with other circumstances in determining the intention of the testator."

An antenuptial agreement creates a debt; a legacy is a gift. We do not depend on the direction of the will to pay debts but only include a mention of it as a part of the overall showing of the testator's intention. With or without that provision, the requirement to pay the debts of the decedent exists.

Appellee is entitled to recover both the amount of indebtedness incurred as a result of the agreement and the legacies.

Affirmed.