**Elizabeth DAINTON, Appellant (Defendant),**

**Wayne Dainton and Juanita Sorem (Defendants),**

v.

**Minerva C. WATSON, Executrix of the Estate of Verlie O. Altman, Deceased, Appellee (Plaintiff).**

**No. 5744.**

Supreme Court of Wyoming.

Feb. 11, 1983.

Dennis C. Meier of Meier & Donovan Law Office, Lusk, signed the brief and appeared in oral argument on behalf of appellant.

Alfred G. Kaufman, Jr., Lusk, signed the brief and appeared in oral argument on behalf of appellee.

Before ROONEY *, C.J., and RAPER, THOMAS, ROSE **, and BROWN, JJ.

RAPER, Justice.

This is an appeal from the judgment of the district court declaring a $20,000 bequest to Elizabeth Dainton (appellant) forfeited and denied pursuant to the terms of a no-contest or in terrorem clause [1] in the

---

\* Became Chief Justice on January 1, 1983.

\** Chief Justice at time of oral argument.

1. Defined as a warning provision applied to legacies given upon condition that the recipient shall not dispute the validity or the dispositions of the will, the penalty being forfeiture of the bequest or devise if such a contest is initiated. Black's Law Dictionary (5th ed. 1979).

will of Verlie O. Altman. The provision of that clause was invoked as a result of appellant's unsuccessful attempt to contest the validity of the will of Verlie O. Altman, deceased. We have already reviewed the will contest proceeding and have affirmed the jury's decision upholding the validity of the will. *Matter of Estate of Altman,* Wyo., 650 P.2d 277 (1982). The issue raised here is whether the district court erred in enforcing the terms of the will's in terrorem clause without first considering whether appellant contested the will in good faith and with probable cause to believe the will was invalid.

We will affirm.

Verlie O. Altman died testate on May 4, 1981, at the ripe old age of eighty-five. Mr. Altman was unmarried and without issue at the time of his death. Nine days after his death, on May 13, 1981, appellee admitted Verlie O. Altman's Last Will and Testament to probate in Niobrara County, Wyoming. That will had been executed by Mr. Altman on July 7, 1977. The will was subsequently contested by appellant, Mr. Altman's sister, on the grounds of improper execution, incompetency of the testator, and undue influence. After a jury trial, the contest failed and the validity of the will was upheld and affirmed by this court as noted.

After appellant's action to contest the will failed, appellee filed a petition for forfeiture in the district court asking that the bequest to appellant, appearing in the will, be forfeited pursuant to the in terrorem clause of the will. Additionally, appellee asked that the bequests to Wayne Dainton and Juanita Sorem also be forfeited under the same clause for appearing as witnesses in the will contest proceeding in behalf of appellant. Verlie Altman's bequests to Wayne Dainton and Juanita Sorem were not forfeited by the district court. That decision is not on appeal in that the attempted cross-appeal was dismissed for failure of the cross-appellant to timely file her brief. From the judgment of the district court ordering that appellant's bequest be forfeited and denied, appellant brings this appeal.

Verlie Altman, in his will, made quite a number of specific bequests to family members and friends. Included in those bequests was one for $20,000 to his sister, appellant. Mr. Altman also included a no-contest or in terrorem clause in his will which is at issue here. It provided:

"SIXTH, I hereby direct that if any person entitled to any legacy, bequest, interest or estate shall directly contest or dispute the probate of this Will, or institute or become a party to instituting any proceedings, or act in the interest of any person who shall institute any proceedings, suit or action for the purpose of changing the effect of this Will wholly or in part, then and in that event all the legacies, bequests, estate or remainder interest declared in favor of such person by this Will or herein provided, shall immediately thereupon be revoked, cease and determine and become wholly void and of no effect."

Specifically on appeal, appellant would have this court adopt a rule governing the enforcement of a no-contest or in terrorem clause similar to the rule found in § 3–905 of the Uniform Probate Code (U.P.C.). That section provides:

"A provision in a will purporting to penalize any interested person for contesting the will or instituting other proceedings relating to the estate is unenforceable if probable cause exists for instituting proceedings."

Appellant argues that public policy demands that such a rule be applied to this and similar cases where a will is contested in good faith and with probable cause to question the will's validity. Appellant contends that the district court erred in not reaching the question of appellant's motive in contesting the will before strictly construing the terms of the no-contest clause.

Appellant made a similar public policy argument before the district court which that court rejected when it concluded as a matter of law:

"1. That the sixth paragraph of the Last Will and Testament of Verlie O. Altman, deceased, is valid. The law of origin of

the Will contest portion of the Wyoming Probate Code is the state of California, and the state of California has held that similar provision in Wills provided for forfeiture of legacy in the event of a contest of Will by a legatee was not contrary to public policy, was valid and binding upon the legatee, and was to be given effect according to the intent of the testator.

"Counsel for Defendants argue that Section 3–905 of the Uniform Probate Code provides that such a provision is unenforceable if probable cause exists for instituting proceedings. The State of Wyoming has not adopted the Uniform Probate Code, nor has the legislature seen fit to adopt Section 3–905 of said code."

We agree with the position taken by the district court.

■ In the first place, in considering a will, it is the long-accepted position of this court that intent of the testator must govern. *Kortz v. American Nat. Bank of Cheyenne*, Wyo., 571 P.2d 985 (1977); *Hammer v. Atchison*, Wyo., 536 P.2d 151 (1975); *In re Gilchrist's Estate*, 50 Wyo. 153, 58 P.2d 431, reh. denied 50 Wyo. 153, 60 P.2d 364 (1936). In determining the testator's intent, we can only determine that intent from what the will says; we are not free to write terms in the will that do not, in reality, appear there. *Kortz v. American Nat. Bank of Cheyenne*, supra; *Hammer v. Atchison*, supra; *Churchfield v. First Nat. Bank of Sheridan*, Wyo., 418 P.2d 1001 (1966). We will not supply words for a testator where the will is clear and unambiguous. *Kortz v. American Nat. Bank of Cheyenne*, supra; *Matter of Estate of Lendecke*, 79 Wyo. 27, 329 P.2d 819 (1958).

■ In the case before us, the testator, Verlie O. Altman, quite unambiguously expressed his intent that anyone entitled to a bequest under his will who instituted proceedings contesting the validity of any part of the will would have his bequest revoked. Under our aforementioned rules governing the interpretation of wills it is quite obvious that the district court did not err in declar-

ing the testator's bequest to appellant forfeited and denied. It would have been error for the district court to have done otherwise. The no-contest or in terrorem clause in Verlie Altman's will did not exempt those who challenged the will in good faith and with probable cause from its provisions. The will clearly said anyone who challenged the will would lose his or her share. Therefore, to have applied the terms of the will in the manner in which appellant suggests would require judicial construction where such construction would be clearly improper.

We also note, as did the district court, that the will contest provisions found in the Wyoming Probate Code [2] were taken from the California Probate Code and that those provisions retain their similarity. See, *Gaunt v. Kansas University Endowment Ass'n of Lawrence, Kansas*, Wyo., 379 P.2d 825 (1963). That being the case, this court has previously announced an inclination to follow California's precedent when dealing with will contest matters which are before us for the first time. The issue raised by appellant concerning no-contest clauses is one of first impression for us. The view of the California courts on the enforcement of no-contest or in terrorem clauses is in accord with the position we are taking here. In *Estate of Friedman*, 100 Cal.App.3d 810, 161 Cal.Rptr. 311 (1979), a California court of appeals, faced with an argument nearly identical to the one made here by appellant, made this statement on the law in California as it regards no-contest clauses:

" * * * Our Supreme Court has repeatedly declared that a provision in a will providing for forfeiture of a legacy in the event of a contest of the will by the legatee is not contrary to public policy, is valid and binding upon the legatee, and is to be given effect according to the intent of the testator. [Citations.] This principle has been consistently applied by the intermediate appellate courts of this state. [Citations.] * * * " Id. 161 Cal. Rptr. at 313.

**2.** Section 2–6–301 et seq., W.S.1977 (1980 Replacement).

Although we are not bound by the decisions of the California courts, we are persuaded by their decisions that our holding on the issue is correct.

In reaching our decision, we, like the district court, find additional strength for our position from the fact that our legislature has chosen not to incorporate § 3–905 of the Uniform Probate Code into the recently enacted Wyoming Probate Code. Chapter 54, Session Laws of Wyoming, 1980. The Wyoming legislature and the committee that helped draft the new probate code were no doubt aware of the Uniform Probate Code and all of its various provisions; yet they chose not to incorporate § 3–905 or anything like it into our statutes. Appellant urges us now to do what the legislature chose not to do; that is, to judicially implement the provisions of § 3–905 into the body of the probate law in Wyoming. That we will not do.

Appellant argues that public policy demands that those who contest wills in good faith and with probable cause to believe that a will is invalid should be protected from strict enforcement of the terms of a no-contest clause. To strictly enforce no-contest clauses, appellant asserts is to create a device for the unscrupulous to manipulate estates to their benefit. That view pays little respect to the ability of our judicial system to discover any such unscrupulous acts. It also ignores the overriding policy of this court and the well-accepted principle elsewhere that a testator's intent as determined by the language in his will is controlling.

Recently in our decision in *In re Adoption of MM*, Wyo., 652 P.2d 974, 978 (1982), we discussed what public policy is. We said that "[i]n its general sense, public policy refers to the law of a state embodied in its constitution, statutes and judicial decisions." In *Gaunt v. Kansas University Endowment Ass'n of Lawrence, Kansas*, supra at 826, this court said:

"Proceedings for disproving or contesting a will were unknown to the common law. The right of contest is a creature of statute and a contestant has such rights and

only such rights as the law gives him. [Citations.]"

Thus, public policy in matters dealing with will contest proceedings must be determined from our legislature's enactments or more appropriately here from the absence of any such enactments. If public policy favors the adoption of provisions similar to those found in § 3–905 of the U.P.C., then it is for the legislature to make those provisions part of the probate law of Wyoming and not the courts. We do not intend to judicially do so.

Affirmed.

ROSE, Justice, specially concurring.

I agree with the result reached by the majority of the court in this appeal, but I have the need to express some additional thoughts with respect to appellant's contentions. This need comes from my concern that the majority opinion may be read to stand for the proposition that the testator can, through provisions in the will, threaten any beneficiary with forfeiture of his or her devise for bringing an action on the will. In my opinion, the case law upholding "in terrorem" clauses does not support the application of such forfeiture provisions in circumstances where the subject of the suit is to ascertain the intention of a testator as embodied in the will, rather than where the action is brought out of the beneficiary's desire to defeat that intent. Given this precedent, I wish to more thoroughly discuss the rationale behind the rule adopted in the majority opinion, and express my belief that the rule should not be applied except in circumstances which are similar to those found in this case.

The authorities agree that the question of the enforceability of "in terrorem" clauses has been a highly debatable issue. On the one side are the courts which have adopted the view expressed by the appellant in his brief. That viewpoint is exemplified by the discussion appearing in *In re Cocklin's Estate*, 236 Iowa 98, 17 N.W.2d 129, 157 A.L.R. 584 (1945). The Iowa Supreme Court quoted from one of its prior cases as follows:

"Counsel for the legatees herein concede that the foregoing pronouncements are squarely against their contentions. They ask us to modify and overrule the majority opinion in *Moran v. Moran* to the extent necessary to make the position of this court that taken by Judge Evans in his dissenting opinion wherein he stated, at pages 469 to 473 of 144 Iowa [451], at page 208 of 123 N.W. [202], 30 L.R. A.,N.S., 898, as follows:

" 'Evans, C.J. (dissenting). Upon one branch of this case I am not able to concur in the majority opinion. The question whether a provision in a will forbidding any contest thereof under penalty of forfeiture of all legacies therein should be given unqualified effect is one upon which there is a diversity of opinion in the courts. The cases on the subject are comparatively few. It is perhaps true that the numerical majority of the courts which have passed upon the question have adopted the affirmative of the proposition, but some of these have done so with reluctance. I am convinced that the real merit of the argument is with the other view, and that such provision in a will is contrary to public policy, unless it be limited in its application to those contests wherein an element of bad faith enters. Under the law no will can become effective in any of its provisions until it shall have been admitted to probate by the court. Before admitting it to probate, it is the duty of the court to investigate the facts and circumstances attending its execution and bearing upon its validity, and to find judicially therefrom that such will was executed in due form, voluntarily, and understandingly by the purported testator. If the court should find otherwise, it must reject the will and refuse its probate. * * * Manifestly, in order to attain true judicial results, the court has need to learn true facts. These must come, if at all, from those who are or were in a position to know them. * * * If the court is to learn the truth from outside sources of information, it is manifestly important that the highway of information to the court be kept open, and that there shall be no lion in the way. But here is a forfeiture provision in the purported will itself which may be a roaring lion intended to terrorize every beneficiary of the will. Its demand is that no adverse evidence be volunteered. Its tendency is necessarily to suppress material facts, and thus to impede the administration of the law according to its true spirit. * * * And it does sometimes happen in very truth that a will regular in form, bearing the genuine signature of the testator in the presence of witnesses, is nevertheless not his will. On the contrary, it was framed and dictated by another, and the dying man mayhap put to it his listless hand without knowledge to comprehend or will to resist. Into such a will the proviso under consideration will hereafter surely find a place. The dictator of such a will will be more likely to incorporate such a provision in the will than would the testator himself. On principle, therefore, and in the interest of good public policy, it seems clear to me that the contest of a will in good faith and for probable cause should not be forbidden nor penalized, nor should it be permitted to work a forfeiture of a legacy.' " 17 N.W.2d at 132–133.

The opinion then goes on to observe that the tendency of the courts is to shift in favor of the position expressed in the above-quoted dissenting opinion. Upon noting this fact, the Iowa court proceeded to adopt the following rule:

"We see no occasion to interfere with the rule established by the Moran case that a testator may legally impose upon a legacy or devise a condition against attack upon the will, that such condition is valid irrespective whether the gift be of realty or personalty, and irrespective of the presence or absence of a gift over. However, we do modify and to that extent overrule that part of *Moran v. Moran,* supra,

which holds such condition valid without regard to the cause or ground of contest. We now hold that such condition will not be enforced against one who contests the will in good faith and for probable cause." 17 N.W.2d at 135.

On the other side are the courts that enforce the provisions of an "in terrorem" clause regardless of the good faith and probable cause of the contestant. The rationale behind this rule is as was expressed in *Rossi v. Davis,* 345 Mo. 362, 133 S.W.2d 363, 372, 125 A.L.R. 1111 (1939):

"After careful consideration of the question, we are of opinion that the conclusion reached by the Massachusetts court and in other decisions to like effect, as above indicated, is supported by the better reasons and rests upon the sounder logical foundation. It must be conceded that (subject to certain limitations or exceptions not here necessary to consider) a person may dispose of his property as he wishes. A prospective heir has, generally speaking, no vested right in his ancestor's property. If there be a will the legatee or devisee takes thereunder what the will gives him and subject to the conditions thereby imposed. He may contest the will and show, if he can, that it is *not the will* of his ancestor, whereupon the whole purported will falls. But if it be established that it is in fact the ancestor's will, then it would seem the will must stand, not in part but in toto. One cannot claim under a will and against it at the same time. He takes according to the will, or, so far as concerns the will, not at all. 'It is a general principle of law that one cannot claim under a will and against it too, and one who accepts a beneficial interest under a will thereby adopts the whole will and renounces every right or claim that is inconsistent with the will.' *In re Bernays' Estate* [344 Mo. 135], 126 S.W.2d 209, 216, 122 A.L.R. 169, and cases cited. In a case such as we have before us the gift is made upon a condition which the courts generally hold is not opposed to public policy or morals nor to established rules of law, with a definite gift over to another in case of violation of the condition. To engraft upon the condition thus distinctly expressed by the maker an exception not expressed nor reasonably implicable from the language of the instrument is to nullify the will of the maker, if in fact it be his will. Whether or not it is in fact his will is a question which any legatee or devisee or beneficiary may submit to the arbitrament of the courts. He is not precluded by the no-contest clause from seeking redress in the courts. The courts are open to him to show, if he can, that the alleged will or instrument is not the will of his ancestor—is not valid—in which case the whole instrument falls. But if it be adjudged to be the will of the maker, why should it not be given effect as written, absent some prohibitive rule of public policy or established rule of law? The dissatisfied legatee or beneficiary has his day in court. He may, without legal restraint, submit to the court the question, is the purported instrument in fact the will of the maker? If it be adjudged that it is not, he wins. If it be adjudged that it is, he loses. But every litigant takes and must take the chance to win or lose in a lawsuit. There is no obligation on the part of a disappointed legatee or beneficiary to question the sanity of him from whom the gift comes—or, we may add, to question whether or not the purported instrument was the product of undue influence."

Given this divergence of opinion, I must agree with the rule adopted by the majority opinion that the "in terrorem" clause is fully enforceable against the appellant in this case, whether or not she contested the will in good faith and with probable cause. Such a rule is supported by sound logic and, in my opinion, by the weight of authority. I realize that the number of decisions on each side are about the same, but, given our general rule giving full effect to the testator's intent, I agree with the result reached by the majority of the court. See: Annot., 125 A.L.R. 1135; Annot., 157 A.L.R. 596; *Commerce Trust Company v. Weed,* Mo., 318 S.W.2d 289, 301 (1958); *Ivancovich v. Meier,* 122 Ariz. 346, 595 P.2d 24, 30 (1979).

As expressed earlier, my concerns focus upon what I perceive as the possible overbreadth of the majority opinion. From my understanding of the authorities, we must distinguish between actual contests and other actions before we decide whether the "in terrorem" clause can be applied to the circumstances. I note the discussion in *Lawrence v. Latch*, Tex.App., 424 S.W.2d 260, 263, reh. denied, reversed on other grounds 431 S.W.2d 307, 310 (1968):

"Apparent from the language found in *Calvery v. Calvery*, 122 Tex. 204, 55 S.W.2d 527 (1932) is the rule of law that a suit brought in good faith and upon probable cause to ascertain the intention of a testator and the extent of his devise, and then, in turn, *to enforce the terms of the will in accordance therewith*, will not be considered as an effort to vary the purpose and intention of the will, or to destroy it, and in consequence to thwart the testator's intent."

Similarly, see *Matter of Estate of Seymour*, 93 N.M. 328, 600 P.2d 274, 278 (1979):

" * * * No-contest provisions are valuable will devices. They serve to protect estates from costly and time-consuming litigation and they tend to minimize family bickering over the competence and capacity of testators, and the various amounts bequeathed. However, the function of the court is to effect the testator's intent to the greatest extent possible within the bounds of the law. To strictly construe no-contest provisions in the face of obvious indications of unresolved legal questions, such as were present in this case, could result in complete destruction of a testator's intent. *Accordingly, where the circumstances upon which a will is based have changed substantially between the time of its execution and the time of its probate, courts should not discourage contests. The circumstances relative to the Seymour will were sufficiently changed to justify appellee Davis in seeking a judicial determination construing its meaning and effect.*" (Emphasis added.)

Finally, I rely on what was said in *Alexander v. Rhodes,* 63 Tenn.App. 452, 474 S.W.2d 655, 660 (1971), in quoting from *Tate v. Camp,* 147 Tenn. 137, 245 S.W. 839, 844, 26 A.L.R. 755 (1922):

" 'If the action of a legatee is merely one to determine the true construction of the will, or of any of its parts, the action could not be held to breach the ordinary forfeiture clause, *for the object of the action is not to make void the will, or any of its parts, but to ascertain its true legal meaning.*' (Emphasis added.) [*South Norwalk Trust Co. v. St. John,* 92 Conn. 168, 101 A. 961 (1917).]"

In my opinion, these authorities suggest that even under the rule announced in the majority opinion, "in terrorem" clauses are not to be applied in circumstances where the beneficiary's intent is not to void the will but rather to assist the court in determining the intent of the testator as expressed in the will submitted for probate. Thus, had the present dispute involved an attempt to forfeit the appellant's interest because she had brought an action claiming that the testator's will embodied a certain intent rather than claiming the will to be null and void, I would have held the "in terrorem" clause to be inapplicable. This rule, of course, would only apply upon a finding that the challenged "contest" had been brought in good faith and with probable cause.[1]

Given the above authorities, I concur in the majority opinion only because the appellant's action on the will had as its purpose the defeat of the testator's intent as expressed therein. Had the action been one questioning the intent rather than the validity of the instrument, I suggest that the result should have been that proposed by the appellant.

---

1. For a discussion of what constitutes a "contest" or attempt to defeat a will, see: Annot., 49 A.L.R.2d 198.