[No. 11508.   Department Two. — September 25, 1886.]
JEROME WINGERTER, RESPONDENT, v. CHARLES
J. WINGERTER, APPELLANT.

ESTATE OF DECEDENT — CONVEYANCE TO ADMINISTRATOR — FALSE REPRE-
SENTATIONS — FRAUDULENT INTENT — TRUSTEE. — An administrator of
the estate of a deceased person, who induces the heir of the decedent, by
representations false in fact, though made without any fraudulent intent,
to convey to him his interest in the estate, and afterwards procures the
interest to be distributed to himself, becomes an involuntary trustee for
the heir.

ID. — PAYMENT OF CLAIM OF ADMINISTRATOR — RIGHT TO WHEN LOST BY
LACHES. — The land in question was originally part of the estate of a de-
ceased person, of which the defendant was the administrator. Pending
the administration, the defendant presented a claim against the estate,
which was allowed by the court. The claim was never paid, nor did the
defendant ever institute any proceedings for the sale of property for its
payment. Thirteen years after the allowance of the claim, the defend-
ant, by false representations as to the condition of the estate, induced
the plaintiff, the only heir of the decedent, to convey to him all his in-
terest in the estate, and afterwards procured its distribution to himself.
The action was brought to charge the defendant as trustee for the plain-
tiff of the property so fraudulently obtained. *Held*, that the plaintiff
was entitled to the relief sought, without paying the indebtedness to the
defendant, as the latter, by not applying for the sale of property of the
estate to pay the claim, had lost his right to payment.

APPEAL from a judgment of the Superior Court of Los
Angeles County, and from an order refusing a new trial.

The facts are stated in the opinion.

*Glassell, Smith & Patton,* and *Bicknell & White,* for Ap-
pellant.

*Graves & Chapman,* and *H. T. Gage,* for Respondent.

BELCHER, C. C.—This action was commenced in
August, 1883, to obtain a decree that the defendant held
the title to certain real property described in the com-
plaint, in trust for the plaintiff, and that he be required
to account for its rents and profits.

The case was tried and judgment rendered in favor of

the plaintiff. The defendant moved for a new trial, and his motion being denied, appealed from the judgment and order.

The facts as disclosed by the record are substantially as follows:—

In September, 1867, John D. Wingerter died intestate in the county of Los Angeles, being at the time a resident of that county, and leaving estate therein. The plaintiff was the only child and heir of the deceased, and at the time of his father's death was and now is a resident of the state of Missouri, and has never at any time been in the state of California. The defendant, a brother of the deceased, residing in this state, was on the eighteenth day of October, 1867, duly appointed by the Probate Court of Los Angeles County the administrator of his estate, and he continued to act as such administrator until the settlement and distribution of the estate, in November, 1881. Upon his appointment, the defendant took charge of the property of the estate, which consisted of some personal property and twenty-three acres of land, situate in the city of Los Angeles.

Prior to 1870, the defendant sold the personal property and paid all claims against the estate except one for $6,332.03, which was presented by himself and allowed by the probate judge on the 31st of August, 1868.

The plaintiff first learned of his father's death sometime in the year 1868, through his uncle, Jacob Wingerter, who resided in Missouri, and informed plaintiff that defendant requested him to send defendant a power of attorney to represent plaintiff in the estate. Plaintiff was then a minor, and did not make a power of attorney at that time; but he became of age in 1871, and after that made and sent the power as requested. Plaintiff was informed in 1868 that his father owned, at the time of his death, a vineyard at Los Angeles, but he received no further information in regard to the estate till about the month of May or June, 1881, when the defendant

sent to his brother, Jacob Wingerter, in Missouri, a deed conveying all of plaintiff's interest in his father's estate to defendant, and also containing a release of all claims of plaintiff against defendant on account of his administration of the estate. In a letter accompanying the deed, defendant represented that the plaintiff's interest in the estate was worth little or nothing, and he requested that the plaintiff execute the deed and release and return it to him, agreeing if he did so to pay him one thousand dollars.

The deed was given to plaintiff, and he was informed of the contents of the letter and of the offer of one thousand dollars for his interest in the property, which sum was about twice the amount of the estimated cost of closing the estate. The plaintiff then, on the 12th of July, executed the deed and gave it to his uncle, to be returned to the defendant, and it was so returned. On examining the deed the attorneys for defendant were not satisfied with the certificate of acknowledgment, and they thereupon drew another deed and release in substantially the same form, and also a power of attorney, authorizing one Patton, then a clerk in the office of defendant's attorneys, to appear for plaintiff in the probate proceedings, and to consent to the immediate settlement of the estate and the accounts of the defendant as administrator, and to release and discharge defendant from all liability as administrator, and to make for plaintiff all other waivers and consents which he might think proper. The defendant then took these papers and went with them to the state of Missouri, where he found the plaintiff, and again informed him that his interest in the estate was worth little or nothing, but that he would give him the one thousand dollars promised if he would execute the papers last mentioned, at the same time telling him that there was some defect in the deed executed by him in July.

The plaintiff thereupon, on the fifteenth day of August,

executed the deed and release and the power of attorney to Patton, and the defendant paid the one thousand dollars. The defendant then returned to California, and in October presented to the Probate Court the final account of his administration, showing the property of the estate to consist of $1,865.15 cash, two five-hundred-gallon casks worth twenty dollars, and the twenty-three acres of land before mentioned, and also showing that the plaintiff, as sole heir to the estate, had by his deed conveyed to defendant all his right, title, and interest in and to the property of the estate, both real and personal, and had released the defendant from all claims and demands whatsoever on account of his administration of the estate.

The matter came on for hearing before the court on the seventh day of November, and thereupon,—Patton appearing for the plaintiff and consenting,—all the property was distributed to the defendant.

When plaintiff executed the deeds to the defendant he knew there was a vineyard upon the property, but had no knowledge as to its size, character, or value. He had full confidence in the defendant, and depended upon him entirely for information concerning the value of his interest in the estate, and he executed the deeds and power to Patton, in the full belief that the representations made to him by defendant were true.

So when defendant's account was settled and distribution made, he did not appear, except as above stated, because he still believed in the representations of defendant, and supposed he had received all he was entitled to, and more than his interest in the estate was worth.

In point of fact, the estate consisted of $1,865.15 cash on hand, and of twenty-three acres of land in the city of Los Angeles, on twenty acres of which there was a vineyard in full bearing, and yielding from 80 to 114 tons of grapes per annum, then worth the sum of $9,913. And

the only unpaid claim against the estate was that of defendant for $6,332.03, which was presented and allowed in 1868.

In making the representations which induced plaintiff to execute the deeds and power to Patton, defendant was not guilty of any actually fraudulent intent. On the contrary, as he viewed his claim, and the interest due upon it from the time of its allowance, and the costs and expenses of making a sale of the property, he regarded the estate as insolvent, or at most worth but little, if anything, over the claim against it.

But nevertheless the representations were actually untrue. The claim of defendant against the estate, as presented by him and allowed by the court, consisted of a mutual, open, and current account, extending over a period of more than ten years. No settlement of the account or statement of a balance had been had or made between defendant and deceased, and upon this account defendant had computed interest on each item at twelve per cent per annum, compounded annually, and by this computation had made the balance due him $6,332.03. Striking off the interest from both sides, the balance due him was only $2,353.86.

Upon these facts, the court below considered that defendant's claim should be treated as liquidated and settled, or without remedy, and that defendant held the real property in trust for plaintiff, and not subject to the payment of his claim, or to be charged therewith.

1. Did the evidence justify the findings? After carefully reading all the evidence presented in the transcript, we are of the opinion that it did. Upon some points there was a conflict, but even upon these points it seems to have preponderated in favor of plaintiff.

2. With regard to the deeds, it is admitted by the appellant that the principles of law apply, which govern the dealings of parties standing in fiduciary relations, according to which, not only is the utmost good faith

upon the part of the fiduciary required, but the burden of proof devolves upon him to show that such faith was observed, and also that the beneficiary was fully informed of his rights, and not misled even by unintentional misrepresentations. But with regard to the judgments of courts of competent jurisdiction, it is claimed that the rule is different; that they can only be set aside for actual fraud, and that as the defendant was guilty of no intentional fraud, the decree of distribution, giving him title to the property, should have been allowed to stand.

Section 2224 of the Civil Code provides:—

"One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he has some other and better right thereto, an involuntary trustee of the thing gained for the benefit of the person who would otherwise have had it."

This action was not brought to set aside the deeds and decree of distribution, but to charge the defendant as an involuntary trustee, for the benefit of the plaintiff, of the property which he fraudulently and wrongfully obtained under them.

The action was authorized and proper, and plaintiff was entitled to the relief granted. (*O'Connor* v. *Flynn*, 57 Cal. 293; *Olivas* v. *Olivas*, 61 Cal. 382.)

3. It is earnestly argued for the appellant that whatever view may be taken of the other points in the case, a reversal is necessitated by the ruling of the court, that the claim of the defendant was barred by his failure to institute proceedings for the sale of the land, and that plaintiff was entitled to a reconveyance without paying any part of the indebtedness due from the estate to defendant. It is said the claim of defendant, after its approval, constituted a judgment, and required no further legal proceedings to establish its validity, and that the rule that he who seeks equity must do equity should have been applied.

It is settled law in this state, and has been ever since the decision in *Beckett* v. *Selover*, 7 Cal. 215, S. C., 68 Am. Dec. 237, that on an application to sell the real estate the heir may dispute the validity of the claims on which the petition is based, although they have been allowed by the executor or administrator and probate judge; that the petition to sell is a substitute for an action against the heir, who must be cited, and then first has his day in court, and that the "allowance" is only *prima facie* proof of the claim.

In *Estate of Crosby*, 55 Cal. 574, a petition had been presented and granted to sell real estate to pay a claim seventeen years after the claim was allowed. After reviewing the authorities, the court on page 586 said:—

"A full examination of the foregoing and other cases in which it was admitted that the statute of limitations did not apply will show it to have been held, nevertheless, from the very nature of the proceedings and the character of the duties imposed upon the courts where the estates of deceased persons are administered, as well as from the various provisions of the statutes of different states, which, however they may differ in detail, are all impressed with an evident legislative intent that the proceedings shall be promptly inaugurated and continuously prosecuted without unnecessary delay; that the courts of probate retain the power, and it is their duty to refuse an order granting leave to sell where the delay amounts to *laches.*"

The court then, after stating that it could see nothing in the facts appearing in the findings to excuse the delay of seventeen years which had occurred in the case, further said:—

"It would seem that the circumstances which can excuse a delay, otherwise unreasonable, must be such as arise out of the peculiar condition of the administration, and such as have prevented the executor or administrator from moving more expeditiously. . . . . In any event

we cannot conceive of a case in which a delay to petition for more than seventeen years after qualification of an administrator could be held to be reasonable."

The order directing the sale was reversed, and the court below was directed to dismiss the petition.

In this case the defendant delayed for *thirteen years* to petition the court for an order to sell the property to pay his claim, and no excuse is given, or attempted to be given, for the delay. During that time the rents, issues, and profits of the property, as returned by defendant, were $6,820.85, and his expenditures as administrator amounted to $4,955.70. He may have thought his claim bore good interest, and that he could take his own time to wind up the estate and pay it; but if so, he was mistaken. The delay, being without excuse, was unreasonable, and if in 1881 he had applied for an order to sell the property, his application would have been denied. The fact that, instead of applying for such order, he went to the plaintiff, and, without explaining to him the condition of the estate, or telling him what or whose claims were against it, or why his interest in it was worth little or nothing, induced him to execute the deeds, and power to Patton, can put the defendant in no better position than he would have been in if he had applied for an order. The rule invoked by counsel, therefore, does not apply.

The other points made in the case do not require special notice.

In our opinion the judgment and order should be affirmed.

SEARLS, C., and FOOTE, C., concurred.

THE COURT.—For the reasons given in the foregoing opinion, the judgment and order are affirmed.

Hearing in Bank denied.