595 P.2d 24

Byron IVANCOVICH, Appellant
Cross-Appellee,

v.

John Ivan MEIER, Neal Ivan and Terry
Ivan, Appellees. Cross-Appellants.

No. 13951.

Supreme Court of Arizona,
In Banc.

March 27, 1979.

Rehearing Denied May 8, 1979.

Murphy & Hazlett by James M. Murphy, Tucson, for appellant and cross-appellee.

Molloy, Jones, Donahue, Trachta & Childers by Peter Johnson, Tucson, for appellees and cross-appellants.

**348**

STRUCKMEYER, Vice Chief Justice.

This is an appeal and cross-appeal from certain orders entered by the Superior Court of Pima County in the matter of the estate of John Ivancovich, deceased. Affirmed in part, reversed in part.

John Ivancovich died in Tucson, Arizona in 1944. He left surviving his wife, Hertha, and two sons, Byron and George. Hertha and Byron were named as co-executors in his will. They served until the estate was distributed by the Pima County Superior Court in 1947. The bulk of the estate passed to a testamentary trust and was administered by Hertha and Byron as co-trustees. Beneficiaries of the trust were Hertha, Byron and George. George died in 1960, leaving three sons, John Ivan Meier, Neal Ivan and Terry Ivan. Under the trust, the ultimate beneficiaries were Byron, who was to receive two-thirds of the trust estate on the death of Hertha, and George's three children, who were to receive the remainder. After Hertha's death in 1963, the Southern Arizona Bank and Trust Company was named as guardian of the estate of Terry and Neal Ivan, then minors. In 1966, the bank filed a petition requesting the Superior Court to remove Byron as the surviving trustee and to require him to submit a full and proper account of all probate and trust activities.

On June 6, 1967, 20 years after the approval of the final account and report of the co-executors and the decree of distribution distributing the estate to the testamentary trustees, the Superior Court ordered the final account and report and the decree of distribution set aside for the reason it believed the notice provisions of A.R.S. § 14–664 (§ 38–1311 A.C.A. 1939) were unconstitutional. This is the principal order in this appeal of which Byron Ivancovich complains.

A.R.S. § 14–664, prior to its amendment by Ch. 75, § 4, Session Laws of 1974, provided that when an account is rendered for settlement in an estate, notice of the day thereof shall be given by posting in at least three public places in the county, and on petition for final distribution of an estate,

notice shall be given by posting or publication for such time as may be ordered by the court.

Arizona's probate code was derived from California. *In re Estate of Lynch*, 92 Ariz. 354, 377 P.2d 199 (1962); *Shattuck v. Shattuck*, 67 Ariz. 122, 192 P.2d 229 (1948). And see R.S. 1913 § 1008. As early as 1900, the Supreme Court of California, in *Toland v. Earl*, 129 Cal. 148, 61 P. 914, held that once distribution of an estate is decreed it is conclusive upon the whole world. We stated in *Estate of Rose v. Transamerica Title Insurance Company*, 108 Ariz. 101, 103, 493 P.2d 112, 114 (1972):

"It is well established that in probate proceedings (where the final decree of distribution is made in conformity with the law), the final decree of distribution, when approved by the court, is conclusive as to every matter involved and constitutes a bar to further proceedings concerning the same matter."

We express reservations as to the ruling of the Superior Court holding the distribution of the estate void because of the constitutional aspects of the notice, but we have concluded that it is unnecessary to reach this question because there are other substantial grounds which justified the setting aside of the final account and report and decree of distribution.

In *Cross v. Tustin*, 37 Cal.2d 821, 236 P.2d 142 (1951), the California Supreme Court held that the settled doctrine is that a court has the inherent power to set aside a decree procured by extrinsic fraud. Arizona has held that extrinsic fraud may consist of deception practiced by a successful party in purposely keeping his opponent in ignorance of the proceedings so that an appearance may not be made in court. *Honk v. Karlsson*, 80 Ariz. 30, 292 P.2d 455 (1956). We have not had since an occasion to examine into what fraud is extrinsic.

Fraud will generally be considered as extrinsic when it deprives an unsuccessful party of the opportunity to present his case in court. See, e. g., *Stokely v. Stokely*, 30 N.C.App. 351, 227 S.E.2d 131 (1976). But it

is not confined only to cases of that nature. The doctrine of extrinsic fraud is much broader.

In *Crow v. Madsen*, 111 P.2d 7, 14 (Cal. App., 1941), the California law was summarized in this manner:

"(1) That where there exists between the parties a confidential relationship such as parent and child, or husband and wife, there is a duty imposed to deal fairly, not fraudulently; to disclose the true facts and not to deceive; that a breach of this duty may constitute extrinsic fraud.

(2) That where a fiduciary relation exists such as guardian and ward, administrator and heir, executor and legatee, trustee and beneficiary or principal and agent, there is also a duty imposed to deal fairly, not fraudulently, to disclose the true facts and not to deceive; that a breach of this duty may constitute extrinsic fraud.

(3) That when a person is appointed by the probate court as a guardian, an executor, an administrator or a trustee, he is an officer and agent of the court; that there is also a duty imposed to deal fairly, not fraudulently, with the court; to disclose the true facts and not to deceive the court; that a breach of this duty may constitute extrinsic fraud."

Later, in the case of *Gale v. Witt*, Cal. App., 180 P.2d 993, 996, *rev'd on other grounds*, 31 Cal.2d 362, 188 P.2d 775 (1948), the court said:

"In other cases, the concealment of material matters and the suppression of the truth with the intent to mislead the court have been held to constitute extrinsic fraud on the general ground that they have in fact prevented the injured party from presenting, or fully presenting, his case in the original action. (*Wingerter v. Wingerter*, 71 Cal. 105, 11 P. 853; *Wickersham v. Comerford*, 96 Cal. 433, 31 P. 358; *Curtis v. Schell*, 129 Cal. 208, 61 P. 951, 79 Am.St.Rep. 107; *Sohler v. Sohler*, 135 Cal. 323, 67 P. 282, 87 Am.St.Rep. 98; *Campbell-Kawannanakoa v. Campbell*, 152 Cal. 201, 92 P. 184, 187.) In several

of these cases confidential relations between the parties with a consequent duty to reveal the true facts was also relied on as supporting the theory of extrinsic fraud. In some of them the offending party had also acted as executor of the estate, and there had been a breach of the resulting duty to disclose the facts to the court."

We have in the present case, as a minimum, a failure to disclose facts to the court.

■ The Superior Court, after years of attempting to resolve the problems attendant upon distributing the assets held in the trust estate, finally on September 27, 1976, after extensive hearings entered its findings to the effect that Byron Ivancovich filed reports with the court which were prepared for the purpose of misleading "everyone, including the court" as to the true nature, extent and condition of the probate estate and that he "has demonstrated a lack of fiduciary responsibility to the remaindermen who are his nephews." It concluded in its findings that the accounts of Byron Ivancovich were "performed or not performed, as the case may be, with the intent to prevent all persons, including the other remaindermen and the court, from determining if the properties and funds of the probate estate were properly handled from the date of qualification of the co-executors April 17, 1944, through the end of the estate accounting period August 31, 1947 * * ." The findings are abundantly supported by the evidence.

We said in *In re Sullivan's Estate*, 51 Ariz. 483, 494, 78 P.2d 132, 137 (1938): "If it appears that the executors or administrators have been guilty of extrinsic fraud in securing the order approving the account, such order may be attacked directly and set aside at any time, * * ."

■ We therefore conclude that the Superior Court did not err in setting aside the final account and report of the executors and decree of distribution distributing the estate of John Ivancovich to the testamentary trustees.

■ Byron Ivancovich next questions whether John Ivancovich had the right by will to arbitrarily determine that certain of his real property was his sole and separate estate and that other real property was the community estate of his wife Hertha and himself. This question arises out of the ruling of the Superior Court in which, in a Petition for Partial Declaratory Judgment filed on the 4th day of September, 1969, Byron Ivancovich sought a declaration from the probate court that property described in the inventory as separate property of John Ivancovich, deceased, was in fact community property. The court ruled that any question as to the character of the property described in the will of John Ivancovich was barred by the statute of limitations, by laches, by estoppel, and by ratification.

The Superior Court was clearly correct. The Petition for Partial Declaratory Judgment was filed more than 15 years after the death of John Ivancovich. In the interim, Byron Ivancovich's mother, Hertha, had died. Byron was named in her will as her sole heir. It was therefore to Byron's interest to have the separate property of John Ivancovich determined to be community because one-half would under Arizona's law have been Hertha's. Lapse of time and changed circumstances plainly prohibit relief under these circumstances.

■ First, it is a common rule of law that one cannot claim an interest under an instrument without giving full effect to the instrument.

"'The modern English cases do not, we apprehend, extend or enlarge the principle of election. That principle, as applicable to this case, we take to be this; that no one shall be permitted to take under an instrument, and defeat its provisions; or, in the language of Lord Erskine, a person shall not claim an interest under an instrument, without giving full effect to that instrument as far as he can. This is not a new doctrine; it will be found to have been announced as long since as the case of Noys & Mordaunt, 2 Ves. 581. Lord Redesdale, in 2 Scho. & Lef. 449, 451, says the general rule is, that a person

cannot accept and reject the same instrument; and he declares it to be the foundation of the law of election, upon which courts of equity, particularly, have grounded a variety of decisions in cases, both of deeds and wills.' [Citations omitted.] Many of these cases adopt the language of Bigelow on Estoppel, 562, wherein it is said: 'A party cannot, either in the course of litigation or in dealings in pais, occupy inconsistent positions; and where one has an election between several inconsistent courses of action, he will be confined to that which he first adopts. Any decisive act of the party done with knowledge of his rights and of the facts, determines his election and works an estoppel.'" *Safe Deposit & Trust Co. of Baltimore, et al. v. Hanna*, 159 Md. 452, 457, 150 A. 870, 872 (1930).

Here, Byron Ivancovich elected to act as the executor under the will and take under its provisions, and it was not until after the death of his mother and he became her sole heir that he attacked the statements in the will as to what constituted the testator's sole property.

■ Second, Byron Ivancovich, after he became executor of the estate of John Ivancovich, drafted an agreement dated March 27, 1944, which was signed by himself, Hertha Ivancovich, and his brother, George. The agreement provided in part:

"Whereas the undersigned and each of them are desirous to deal with and dispose of all the real and personal estate of said John Ivancovich in accordance with the terms of said will;

Now, Therefore * * * it is hereby declared and agreed and the parties hereto mutually covenant that full effect shall be given each and all of the terms and provisions as set forth in said last will and testament."

Estoppel is applied when "'it would be unconscionable to permit a person to maintain a position inconsistent with one in which he has acquiesced.'" *Graham v. Asbury*, 112 Ariz. 184, 540 P.2d 656 (1975). We think that estoppel in pais so plainly applies that further discussion is both unnecessary and

unwarranted. The Superior Court did not err in refusing to declare the entire estate of John Ivancovich community property.

The foregoing disposes of appellant's request that a new accounting be ordered to make the necessary adjustments upon finding that John Ivancovich's estate was totally community and the question which he raises concerning the use by John Ivancovich of community funds to improve separate property. His further questions need be only briefly considered.

Appellant presents a question as to whether the care of the rentals in the downtown Tucson area was a business. Appellees do not answer this question and, therefore, we hold that the care of the estate's rentals was a business.

■ Appellant complains of the lower court's action in refusing to join the estate of Hertha C. Ivancovich as a party to the litigation. As to this, Hertha's estate has long been closed and there was no appeal from the final decree in it. Byron Ivancovich is the beneficiary of two-thirds of John Ivancovich's estate, and appellees are the other beneficiaries. Hertha's estate is not an indispensable party to a complete disposition of this matter for the reason that upon approval of the final account of the trustees, appropriate adjustments by offsets and credits in the accounts of the various beneficiaries can be made. Hertha's estate is not an indispensable party, since an indispensable party is one without whom the action cannot proceed. *Siler v. Superior Court*, 83 Ariz. 49, 316 P.2d 296 (1957).

■ Appellant urges that if George Ivancovich, through whom appellees derived their interest, was dissatisfied with the private accountings which Byron and Hertha made him during the years prior to his death, he was guilty of laches in failing to take action against his mother and brother during his mother's lifetime. However, since appellant does not demonstrate prejudicial change of position by lapse of time, the claim of laches may be disregarded. Mere delay of itself is not laches unless it works to the injury of another. *Kengla v. Stewart*, 82 Ariz. 365, 313 P.2d 424 (1957).

The final points made by appellant are whether the Superior Court was correct in ruling that Byron Ivancovich should be removed as surviving executor of the estate of John Ivancovich, deceased, and whether it was correct in denying him a salary and income for operating the business of the estate from the time of the decedent's death in 1944 to the present time. Appellant argues that in spite of the fact that Byron Ivancovich had devoted his entire time, energy and efforts to the operation of the business of the estate during the entire course of probate and the subsequent period, the Superior Court ruled that what would constitute a reasonable fee is a matter which would be determined when the third amended first and final account and report was approved by the court.

■ Such is well within the discretion of the trial court. The record discloses that the court below disapproved the first and final account and report of the executors and the first and second amended final accounts and reports. Until a satisfactory account and report has been rendered, the court may coerce appellant by disallowing any fees and removing him as trustee for failure to discharge the duties of his trust.

■ Appellees argue that the lower court correctly disallowed a fee of $21,-707.15 which Hertha Ivancovich had previously received as executor's fees. They rely on the ruling of the trial court that there was no evidence submitted which showed that she "performed any appreciable service of administration for which compensation should be allowed." Appellees in effect have challenged appellant to "set forth any portions of the transcript disclosing the value of Hertha Ivancovich's efforts in administering the estate." Since appellant cannot point to such evidence, the disallowance of her executor's fees will not be set aside.

## THE CROSS-APPEAL

■ Cross-appellants first argue that paragraph 16 of John Ivancovich's will compels the forfeiture of all right to receive

any portion of the probate estate by Byron Ivancovich. This arises out of an "in terrorem clause", which reads:

"If any person shall contest this Will, or any part thereof, or seek to revoke the probate of this Will, or bring any suit or proceeding to set aside this Will, or any provision thereof, such person shall receive nothing from my estate and any provision in his or her favor herein made shall be revoked."

As indicated, on September 4, 1969, Byron Ivancovich filed a Petition for Partial Declaratory Judgment seeking to have the separate property listed in John's will declared community property. Cross-appellants invoke this section of John Ivancovich's will, urging that since each separate piece of property was described explicitly in the will, it was not a proceeding essential for construction of the will but, rather, an attempt to thwart the intention of decedent by changing its character. While there is an air of plausibility to cross-appellants' argument, we think, as did the lower court, that Byron Ivancovich, as executor, could bring an action for construction of the will without invoking the in terrorem clause.

The testator provided for three contingencies which would activate the in terrorem clause: First, a contest of the will or any part. As to this, we said in *McNutt v. Gercke*, 62 Ariz. 273, 277, 157 P.2d 347, 349 (1945):

"A 'will contest,' strictly speaking, is any kind of a litigated controversy concerning the *eligibility of an instrument to probate* * * *. * * * Legal questions involved in the construction or meaning of a validly executed will are not grounds of contest."

Byron Ivancovich's Petition for Partial Declaratory Judgment does not question the eligibility of the will to probate and, therefore, is not a contest of the will.

Neither does the petition conflict with the second contingency, in that it does not seek to revoke the probate of the will.

While Byron's suit does not seek to set aside the will, it does question the testator's characterization of his property, and hence, superficially might be described as an attempt to set aside provisions of the will. As to this, courts will not draw distinctions or indulge in quibbling in order that a person plainly coming within the scope of a forfeiture clause escape its provisions for penalty, *In re Kitchen's Estate*, 192 Cal. 384, 220 P. 301, 30 A.L.R. 1008; but in terrorem clauses are strictly construed. The rule is that no wider scope will be given to the language employed by a testator than is plainly required. *In re Fuller's Estate*, 143 Cal.App.2d 820, 300 P.2d 342 (1956). We hold that because the Petition for Partial Declaratory Judgment was a request for instructions concerning the declarations by the testator in his will as to the character of his assets and not strictly an attempt to set aside a "provision" in the will, the trial court did not err in refusing to declare a forfeiture. *In re Brisacher's Estate*, 27 Cal.App.2d 327, 80 P.2d 1033 (1938).

Cross-appellant complains that the lower court erred in ruling that testator's last illness and funeral expenses were to be charged against his separate estate. We hold the expenses of the last illness were a charge against community assets. We have said:

"It is, of course, well settled that a debt incurred by a married man during coverture is presumed to be a community obligation, and that the burden is on one attempting to overcome the presumption to prove his contention." *Donato v. Fishburn*, 90 Ariz. 210, 213, 367 P.2d 245, 246 (1961).

The expenses of last illness are first a charge against community assets, and second against a deceased's separate estate if the community assets are not sufficient to satisfy such expenses.

The funeral expenses, however, are of a different nature. Death has terminated the community and, therefore, it cannot logically be said that funeral expenses are a community debt. But since the Legislature, by A.R.S. § 14–3805, has plainly made "[r]easonable funeral expenses" a charge

against the testamentary estate, see *Nowland v. Vinyard*, 43 Ariz. 27, 29 P.2d 139 (1934), the court may order payment from either the testator's share of the community or the separate estate of the deceased as may appear just, and if neither is sufficient, then from the survivors' share of the community assets.

Finally, cross-appellants argue that the lower court erred in charging the residuary estate with the proportionate share of state and federal taxes assessed against life insurance proceeds paid directly to appellant and Hertha ·Ivancovich. We, however, do not consider the order of the probate court as appealable at this state of the proceedings. A.R.S. § 12–2101 provides:

> "Judgments and orders which may be appealed.
>
> \*   \*   \*   \*   \*   \*
>
> J. From a judgment, decree or order entered in any formal proceedings under title 14."

An "order" pursuant to this section means an order similar to a final judgment or decree entered in any formal proceedings under title 14. The item of which cross-appellants now are complaining is a matter which may be properly disposed of in an appeal from the final decree distributing the estate of John Ivancovich.

It is ordered that this cause be returned to the Superior Court of Pima County and that court forthwith enter into a determination of the proper accounts of both the estate and trust of John Ivancovich, deceased, and to do all things necessary leading to the entry of appropriate decrees of distribution therein without delay.

CAMERON, C. J., and HAYS, HOLOHAN and GORDON, JJ., concur.