643 P.2d 1031
**In the Matter of the ESTATE OF Manuel S. OLIVAS, Deceased.**

**Dolores Olivas FELIX, Plaintiff/Appellee,**

v.

**Dolores S. OLIVAS, Defendant/Appellant.**

**No. 2 CA–CIV 4199.**

Court of Appeals of Arizona, Division 2.

Feb. 18, 1982.

Rehearing Denied March 24, 1982.

Review Denied April 13, 1982.

May, Barassi & Lantz by Louis W. Barassi and Susan O'Mara, Tucson, for plaintiff/appellee.

Russo, Cox, Dickerson & Sylvester, P. C. by Karl MacOmber, Tucson, for defendant/appellant.

## OPINION

HOWARD, Chief Judge.

This is an appeal from an order of the trial court setting aside letters of administration issued to appellant on February 18, 1959 and further setting aside the order assigning the entire estate to her which was entered on April 17, 1959. The court also declared her to be a constructive trustee of the assets of the decedent's estate and required her to make an accounting.

The facts, in the light most favorable to appellee, are as follows. Manuel S. Olivas died intestate on September 14, 1958. He was survived by his widow, appellant, and his daughter, appellee. Appellant filed a petition for letters of administration. The notice of application for letters of administration contained a purported acknowledgment of receipt of the notice by appellee. However, her signature was forged and she never received notice of the application.

The inventory and appraisal filed on April 6, 1959, listed the following community property and value:

Real estate—$6,000.00.

General personal property—$350.00.

Livestock—$400.00.

1949 Chevrolet pickup truck—$150.00.

Total—$6,900.00.

Since the appraised value of the community estate did not exceed $7,000, the entire estate was set aside to appellant under the existing laws.

At trial, the evidence showed that the value of the community estate at the time of the filing of the inventory and appraisal far exceeded $7,000. The original appraiser of the estate, Fernando Orozco, Jr., testified that in 1959 he appraised the structure of the family home and the land upon which it sat for $6,000 but did not appraise the other 40 acres of land in the estate. It appeared that other items were not appraised and Giles Hubbard, appellee's appraiser at trial, testified that the total value of the items not listed in the 1959 inventory or not appraised by the 1959 appraiser exceeded $20,000.

Throughout the years since decedent's death, appellant had represented to appellee that half of the property which her father owned at the time of his death belonged to appellee. These same representations were made to appellee's spouse, Frank Felix, and to other witnesses. When parcels of her father's property were sold, appellee was told by appellant that half of the proceeds of the property belonged to appellee. In the belief that they owned the house in which, they lived which was part of the estate property, appellee and her spouse added five rooms and made other improvements to the family home.

Appellant lived next door to appellee and Felix. Appellee had a daughter by a previous marriage living with her and Felix. When the daughter became a teenager, a problem arose over her discipline and she went to live with her grandmother next door. This problem evoked hard feelings between the daughter and Felix, and in December of 1979, appellant brought a forcible entry and detainer action against Felix to have him removed from the house. It was at this time that appellee discovered that the house was not hers and filed this

action to set aside the previous probate proceedings.

The case was tried before an advisory jury. This jury, in response to special interrogatories submitted to it, found as follows: (1) The value of the assets listed in the probate proceedings were not significantly undervalued; (2) appellee did not believe after the death of her father that half the property was hers; (3) appellee acted unreasonably in waiting as long as she did to protest her mother's alleged conduct; (4) appellee's signature was not forged; (5) appellant acted loyally, honestly and fairly in the administration of the estate; (6) appellee was not justified in relying on any alleged statements of her mother to the effect that half of her father's property was her property. The trial court did not adopt any of the findings of the advisory jury, but instead found that the order setting aside the estate to appellant was procured by extrinsic fraud.

■ Appellant contends that the trial court erred in its judgment because by failing to make its own findings of fact, after rejecting the special interrogatories answered by the advisory jury, it is presumed to have adopted the advisory jury's answers. We do not agree. There is no requirement that the trial court make findings of fact if it rejects those of the advisory jury.[1] If prior to trial, the trial court is requested to make findings of fact, then it must do so. See Rule 52(a), Arizona Rules of Civil Procedure, 16 A.R.S. No such request was made here and the conclusions of law and judgment entered by the court were proper.

Appellant contends that appellee failed to prove extrinsic fraud by clear and convincing evidence. We do not agree. In *Ivancovich v. Meier*, 122 Ariz. 346, 595 P.2d 24 (1979), the court defined and discussed extrinsic fraud. Fraud is generally considered as extrinsic when it deprives an unsuccessful party of the opportunity to present his case in court, but it is not confined only to

cases of that nature. The doctrine of extrinsic fraud is much broader. Where a fiduciary relation exists, such as administrator and heir, there is also a duty imposed to deal fairly and not fraudulently, to disclose the true facts and not to deceive. A breach of this duty may constitute extrinsic fraud. These duties also apply to the confidential relationship of parent and child.

■ We believe there was sufficient evidence in this case to warrant the trial court to conclude the following: (1) That appellant breached her duties to her daughter, an heir, by forging the daughter's signature, having it forged, or ratifying a forgery, so that the daughter would not have an opportunity to appear in the probate proceedings; (2) that appellant deliberately secured a false appraisal so that the whole estate could be set aside to her; and (3) that appellant continued the deception throughout the years by representing that her daughter had an interest in the property. As in *Ivancovich v. Meier*, supra, we have at a minimum in this case evidence of a failure to disclose facts to the court, to-wit, the forged signature and the undervaluation of the estate, as well as a breach of appellant's duty to deal fairly, disclose the true facts and not deceive the heir.

■ Appellant next contends that the trial court erred in allowing into evidence hearsay testimony of the undervaluation of the assets as presented by appellee's appraiser, Giles Hubbard. We do not agree. Hubbard testified that he had spoken to members of the Olivas family in order to reconstruct his appraisal. He asked them what items were on the property or in the possession of the deceased at the time of his death. Testimony at trial corroborated the existence of these items. Rule 703 of the Arizona Rules of Evidence, 17A A.R.S., states:

> "The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or

1. *Wooldridge Construction Company v. First National Bank of Arizona*, 130 Ariz. 86, 634 P.2d 13 (1981) cited by appellant for the proposition that a failure to reject the advisory jury's

findings creates a presumption that the court adopted them is not factually apposite to the case sub judice.

made known to him at or before the hearing. If of a type reasonably relied upon by experts in a particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence."

The testimony of Hubbard fell within the above rule and no error was committed in its admission.

Appellant next asserts that the probate court, under the statute existing in 1959, acquired jurisdiction by publication of the required notices whether or not notice was given directly to the heirs. The court, therefore, had in rem jurisdiction, and the decree was valid and cannot be set aside. We do not agree. If the decree of distribution is procured by fraud, equity will do justice by declaring that the distributees hold the property in trust for the rightful owners. *In re Estate of Rose*, 108 Ariz. 101, 493 P.2d 112 (1972).

Appellant's last contention is that appellee's attack on the decree of distribution was barred by the statute of limitations and laches. We do not agree. If it appears that the executors or administrators have been guilty of extrinsic fraud in securing the order approving the account (decree of distribution), such order may be attacked directly and set aside at any time. *Ivancovich v. Meier*, supra. Appellee was not guilty of laches since her testimony showed that it was not until the filing of the forcible entry action against her husband that she discovered the true facts.

Affirmed.

HATHAWAY and BIRDSALL, JJ., concur.