16 P.3d 776

In the Matter of the ESTATE OF Leland E. THURSTON, Deceased.

Roberta L. Keller, Appellant,

v.

John Thurston and Bess Thurston Foster, in their individual capacities; John Thurston and Bess Thurston Foster, in their official capacities as co-personal representatives of the Estate of Leland Thurston, Appellees.

No. 1 CA–CV 99–0629.

Court of Appeals of Arizona, Division 1, Department B.

Dec. 12, 2000.

Blunt & Associates, P.C. by A. Paul Blunt, Scottsdale, Attorneys for Appellant.

Mariscal, Weeks, McIntyre & Friedlander, P.A. by William Novotny and D. Samuel Coffman, Phoenix, Attorneys for Appellees as Co–Personal Representatives.

Ulrich & Anger, P.C. by Paul G. Ulrich, Phoenix and Thomas J. Shumard, Phoenix, Attorneys for Appellees in their individual capacities.

## OPINION

EHRLICH, Judge.

¶ 1 Roberta Keller is attempting to set aside the court-approved first accounting in her father's estate; she claims that the personal representatives fraudulently failed to disclose documents concerning the classification of assets in the estate. The probate court found that Roberta failed to prove even a prima facie case of such extrinsic fraud and denied her motion to set aside the account-

ing. We agree and thus affirm the judgment.

## FACTS AND PROCEDURAL HISTORY[1]

██ ¶ 2 Leland and Bonnie Thurston were married in 1964. Leland had five children from previous marriages, and Bonnie had a child from a previous marriage. Together, Leland and Bonnie had three children: John Thurston, Clarinda Thurston Vail and Bess Thurston Foster.

¶ 3 Bonnie died on May 14, 1987, and, until his death on July 10, 1988, Leland was the personal representative ("PR") of her estate. After Leland died, Bess became the PR of Bonnie's estate, and John and Bess were appointed co-personal representatives of Leland's estate ("Co–PRs").

¶ 4 The beneficiaries of Leland's estate are John, Bess, Clarinda and Leland's three daughters from previous marriages, Roberta Keller, Sandra Herron and DeLyle Covey. The beneficiaries of Bonnie's estate are John, Bess, Clarinda and Bonnie's daughter from her previous marriage.

¶ 5 At the time of his death, Leland held interests in Red Feather Properties Limited Partnership ("Red Feather"), parcels of land in Yavapai County and Mohave County, stock in the Aspen Corporation and five promissory notes. All of these interests were described as the community property of Leland and Bonnie in the inventory and appraisement filed by the Co–PRs on July 11, 1989 (original inventory) and supplemented on February 12, 1991 (amended inventory). Copies of the original inventory and the amended inventory were served on Roberta and the other heirs.

¶ 6 In 1990, the probate court was asked to approve the settlement of a lawsuit concerning Red Feather. Petitions for orders approving the settlement along with exhibits and notices of hearing were filed in the proceedings for the estates of both Leland and Bonnie; all of these documents were served on Roberta and the other heirs. The settle-

---

1. Because this appeal is from a judgment rendered after a trial to the court, we view the facts in the light most favorable to supporting the judgment. *In re Estate of Pouser,* 193 Ariz. 574, 576, ¶ 2, 975 P.2d 704, 706 (1999).

ment, which was approved in both estates by separate orders, provided that Leland's estate and Bonnie's estate each owned one-half of a 30.7 percent interest in Red Feather. Roberta neither objected to the Red Feather settlement, nor did she request any further documentation at that time.

¶ 7 Between December 1988, when Roberta, Sandra and DeLyle petitioned to set aside the informal probate, and July 1991, Roberta was represented in the proceedings by counsel. One of the attorneys for the two estates, Rudolph Mariscal, gave Roberta's attorney all of the information the attorney requested and invited him to review the complete records of the estates. Included in the materials sent to Roberta's attorney upon his request were documents indicating that Leland and Bonnie had held their interest in Red Feather as community property. In response, Roberta's attorney made no further effort to accept Mariscal's invitation to review the full records but thanked Mariscal for his "generous cooperation" in giving him copies of the documents he had requested and the opportunity for review.

¶ 8 On July 26, 1994, the Co–PRs petitioned the probate court to approve their first accounting, which was · based on the original inventory and the amended inventory. The petition and notice of hearing on the petition were served on Roberta and the other heirs, none of whom objected, and the accounting was approved.

¶ 9 In November 1996, the Co–PRs petitioned the probate court for approval of receipts and disbursements and for a partial distribution of personal property. At the hearing on the petition, Sandra appeared and objected to the accounting on behalf of herself and Roberta.

¶ 10 Months later, Roberta's new attorney brought to her attention certificates of shares in Red Feather issued to Leland and Bonnie: one certificate, dated August 15, 1983, was issued to "L. E. Thurston and/or Bonnie Thurston;" another certificate was dated June 16, 1981, and issued to "Leland E. and

Bonnie Thurston," and the third was issued on July 1, 1980, to "Leland E. or Bonnie Thurston." [2]

¶ 11 Sandra then filed a written objection to the Co–PRs' petition for approval of their accounting. She maintained that the shares of Red Feather had been incorrectly characterized as community property and thus divided evenly between the estates of Leland and Bonnie rather than having been allocated in their entirety to Leland's estate.

¶ 12 In an amended objection, Roberta apparently joined Sandra's objection. The two also alleged that five notes receivable should have been allocated entirely to Leland's estate instead of being divided between the two estates.

¶ 13 Bess and John moved for summary judgment, arguing that Sandra and Roberta were precluded from seeking to reclassify assets of the estate because they had failed to object to the classifications in 1989, when the inventory was filed, and in 1994, when the first accounting was filed and approved. Roberta responded that the stock certificates showed that Leland and Bonnie had held their shares in Red Feather in joint tenancy rather than as community property and that the Co–PRs had breached their fiduciary duty by operating on a contrary basis and by failing to disclose the stock certificates to the other beneficiaries of the estates.

¶ 14 Roberta also filed a petition to remove and surcharge the Co–PRs and a motion to set aside the first accounting. Sandra and DeLyle joined in these filings.

¶ 15 The trial court denied the motion for summary judgment, and the matter proceeded to trial with Mariscal and Roberta as the only witnesses. Mariscal testified that he and other attorneys at Mariscal, Weeks, McIntyre & Friedlander, P.A., the firm representing the Co–PRs and the estates, made the decisions about the filings for the estate. He further testified that the inventory and accounting had more description and detail than in a typical estate and that at no time in

**2.** By letter dated March 12, 1997, to Sandra, Roberta and their attorney, the attorneys for the estates explained the rationale for determining that the disputed assets were community property and provided documentation to substantiate the community-property status of various estate assets.

the administration of the estate was any information about estate assets concealed from anyone.

¶ 16 The court found that Roberta had the burden to prove fraud by the Co–PRs by clear and convincing evidence and that she had failed to carry that burden. It ruled that the Co–PRs had not committed extrinsic fraud, and it denied the motion to set aside the first accounting and the petition for removal of the Co–PRs.

¶ 17 Roberta filed a motion to alter or amend the judgment, arguing, in part, that the court had improperly placed the burden of proof on her and that it had erred in allowing Mariscal to testify. The motion was denied, and Roberta appealed.[3]

## DISCUSSION

### A. Collateral Attack on First Accounting

¶ 18 Roberta attempted to have the first accounting set aside on the basis that the Co–PRs' failure to disclose known, relevant information—particularly the stock certificates showing the interests of Leland and Bonnie in Red Feather—denied her the information she needed to object to the accounting. She argues that this breach of fiduciary duty constitutes extrinsic fraud.

¶ 19 Arizona long ago established that the court's approval of an estate administrator's accounting bars an attempt to reopen consideration of items presented in the accounting. *In re Sullivan's Estate*, 51 Ariz. 483, 494, 78 P.2d 132, 136–37 (1938). In other words, the judicial settlement of interim accountings "as to persons who receive notice and are subject to the court's jurisdiction bars subsequent litigation seeking to raise defaults or defects with respect to the matters shown or disclosed." *Estrada v. Arizona Bank*, 152 Ariz. 386, 389, 732 P.2d 1124, 1127 (App.1987).

¶ 20 Despite the finality of the approval of an accounting, however, the accounting may be reconsidered if the administrator has engaged in fraudulent concealment or misrepresentation in presenting the ac-

counting or in obtaining the approval of the court. *In re Estate of Terman*, 135 Ariz. 453, 455, 661 P.2d 1154, 1156 (App.1983), citing RESTATEMENT (SECOND) OF TRUSTS § 220, cmt. a (1959). Thus,

> [i]f it appears that the executors or administrators have been guilty of extrinsic fraud in securing the order approving the account, such order may be attacked directly and set aside at any time, and when the order is set aside, the various items thereof may be used in an attempt to remove the executors or administrators.

*Sullivan*, 51 Ariz. at 494–95, 78 P.2d at 137.

¶ 21 Generally, fraud is considered extrinsic if "it deprives an unsuccessful party of the opportunity to present his case in court." *Ivancovich v. Meier*, 122 Ariz. 346, 348–49, 595 P.2d 24, 26–27 (1979). However, particularly when a fiduciary relationship is involved, extrinsic fraud is not confined solely to cases of that nature. *Id.* In a case involving a fiduciary relationship, such as administrator and heir or executor and legatee, the fiduciary has a duty to deal fairly, not fraudulently, and to disclose the true facts, not deceive. *In re Estate of Olivas*, 132 Ariz. 61, 63, 643 P.2d 1031, 1033 (App.1982). A breach of this duty may constitute extrinsic fraud. *Id.* Moreover, if a fiduciary who speaks falsely or refuses to reveal the truth also personally profits by his fraudulent conduct, that conduct will justify intervention by the court even in a collateral proceeding. *Sullivan*, 51 Ariz. at 495, 78 P.2d at 137.

¶ 22 Roberta argues that, in determining whether a PR has engaged in extrinsic fraud, a presumption of fraud is implied by law when the fiduciary has engaged in self-dealing and that the burden of proving good faith and complete fairness rests on the fiduciary. However, we need not reach this issue. As she candidly admits, Roberta had the burden of proving a prima facie case, which here included proving knowing nondisclosure. She failed to do so.

---

**3.** Bess and John, as Co–PRs and in their individual capacities, filed a notice of cross-appeal from the portion of the final order that denied the Co-

PRs' request for an award of their attorneys' fees and costs. However, the cross-appeal was dismissed upon stipulation by the parties.

¶ 23 The party who wishes to overturn the finality of a court order approving an accounting should and does bear the burden of establishing at least to a prima facie degree that the fraudulent conduct of the fiduciary prevented the challenging party from making a timely objection to the accounting. The Co–PRs clearly operated as fiduciaries with the duty to settle and distribute Leland's estate in accordance with his will and in the best interests of his estate. ARIZ.REV.STAT. ("A.R.S.") § 14–3703(A). Although there is no evidence that the Co–PRs or their attorneys concealed or purposefully misclassified the assets in question, Roberta argues that the Co–PRs committed fraud by failing to disclose the bases for their conclusions that certain assets were the community property of Leland and Bonnie. We disagree.

¶ 24 The preparation and service of the inventory of probate estate assets are required by A.R.S. section 14–3706(A), which provides that the personal representative shall

> prepare an inventory of property owned by the decedent at the time of his death, listing it with reasonable detail, and indicating as to each listed item, its fair market value as of the date of the decedent's death, its nature as community or separate property and the type and amount of any encumbrance that may exist with reference to any item.

In this context, probate proceedings are intended to be efficient and to dispose of estates with as little burden and expense as possible. *In re Estate of Wiswall,* 11 Ariz. App. 314, 323, 464 P.2d 634, 643 (1970)(basic purpose of estate administration proceedings is to effect transmission of decedent's wealth without unessential diminution). Beginning with the original inventory, the Co–PRs identified the disputed assets as community property. While they did not attach to the inventory the volumes of records that pertained to the estates of Leland and Bonnie, no proceeding was without notice, and there is no contention that the records were not made

fully available for examination by the heirs and their counsel. Roberta has not disputed that she received proper notice of the inventories, the first accounting and the Red Feather settlement and that she and her counsel were free to review the records of the estates without limitation. In short, the original and amended inventories in Leland's estate fully complied with the statutory requirements. *Kinnear v. Finegan,* 138 Ariz. 34, 36, 672 P.2d 986, 988 (App.1983)(administration of decedents' estates purely statutory and procedures outlined in statutes control).

¶ 25 Moreover, the original and amended inventories met the standard established by the RESTATEMENT (SECOND) OF TRUSTS section 173 (1959), which provides that a trustee has a duty to the beneficiary "to give him upon his request at reasonable times complete and accurate information as to the nature and amount of the trust property." The trustee must also permit the beneficiary or an authorized person to inspect documents relating to the trust. *Id.* We conclude that this statement of law also applies to a personal representative. The Co–PRs met this duty. There is no evidence that the Co–PRs or their attorneys prevented Roberta from knowledge of the probate proceedings, from access to any documents or information concerning the estates, or from asserting any claims regarding estate assets.[4]

¶ 26 We recognize that a trustee or PR might ostensibly meet these responsibilities and still violate the fiduciary duty of fair disclosure. For example, a trustee or PR standing to gain thereby might deliberately mischaracterize property in an inventory that was facially compliant with the requirements of A.R.S. section 14–3706(A). Such self-serving and deceptive conduct might well be actionable. *See* RESTATEMENT (SECOND) OF TRUSTS § 173, cmt. d. Roberta, however, failed utterly to muster prima facie evidence that this is such a case. She introduced no evidence to counter Mariscal's testimony that his clients did not tell him how to characterize any of the property, that they relied on

4. Roberta's contention that the shares of Red Feather were held by Leland and Bonnie as joint tenants rather than as community property is

relevant only if she proved extrinsic fraud so that the court could reopen the first accounting and consider the reclassification of estate assets.

him to exercise his best judgment and that he did not knowingly mischaracterize or withhold disclosure of any property or document. Upon such uncontested evidence, the trial court properly found that Roberta had failed to adduce sufficient proof of fraud to shift the burden to the Co–PRs. As it explained, "[u]nder any construction of the facts and the law, Roberta Keller was required to bring forth at least some proof of fraud. A full review of the record demonstrates that there was no such proof of fraud, 'presumptive' or otherwise."

¶ 27 Roberta insists that, in a fiduciary matter, the fiduciaries should be required to comply with the level of disclosure of information and documents required by Arizona Rule of Civil Procedure ("Rule") 26.1. However, the probate of an estate is not a litigated action to which Rule 26.1 applies. As described above, A.R.S. section 14–3706 provides the disclosure requirements for estate assets. The Co–PRs were not subject to the disclosure requirements of Rule 26.1 before the probate proceedings became a disputed matter.

¶ 28 We affirm the decision that Roberta failed to meet her burden of proving a prima facie case of extrinsic fraud.

## B. Testimony of Mariscal

¶ 29 Rule 26.1(b) provides that, if a party first discloses information later than sixty days before trial, it must have leave of the court to extend the time for disclosure. The attorneys for the estate filed a supplemental disclosure statement on December 2, 1998, which identified Mariscal as a trial witness. The evidentiary hearing was held nine days later. Roberta argues that Mariscal's testimony at the evidentiary hearing should have been excluded because it was not revealed in a timely manner that he would testify. We review the court's decision for an abuse of its discretion. *Gerow v. Covill,* 192 Ariz. 9, 18, ¶ 41, 960 P.2d 55, 64 (App.1998).

¶ 30 When evidence is belatedly disclosed, the trial court determines whether good cause exists for allowing the use of the evidence, remembering the goal of "maximizing the likelihood of a decision on the mer-

its." *Allstate Ins. Co. v. O'Toole,* 182 Ariz. 284, 287, 896 P.2d 254, 257 (1995). It may consider the parties' diligence, the reason for the late disclosure and whether there will be prejudice from the use of the evidence. *Id.* at 288, 896 P.2d at 258.

¶ 31 The court did not abuse its discretion in allowing Mariscal to testify, both on his handling of the estates and the standards for filings in probate matters. Roberta had reason to be well-acquainted with his activities in the proceedings and the course of his representation about which he would testify. Mariscal was listed as a witness in the joint pretrial statement, in which Roberta's attorney participated, and her attorney deposed Mariscal approximately a week before the hearing. We will not disturb the court's decision to allow Mariscal to testify.

¶ 32 Roberta further argues that it was improper for Mariscal to participate in the trial because he and his law firm took a position in favor of the Co–PRs to the detriment of other beneficiaries. By doing so, she contends, he violated his duty of neutrality among competing interests in the estate.

¶ 33 In *In re Estate of Shano,* 177 Ariz. 550, 556, 869 P.2d 1203, 1209 (App.1993), we held that, while a personal representative owes a duty of fairness and impartiality to all beneficiaries, the attorney owes a client "a duty of undeviating and single allegiance." We clarified that holding in *In re Estate of Fogleman,* 197 Ariz. 252, 257, ¶ 11, 3 P.3d 1172, 1177 (App.2000), in which we noted that the beneficiary is not a client of the personal representative's attorney and, therefore, that no duty of undivided loyalty is owed by the attorney to the beneficiaries.

¶ 34 By testifying at the hearing, Mariscal did not breach his or his law firm's duty of fairness to the beneficiaries. He testified that the Co–PRs relied upon and complied with the advice given them by their attorneys. His testimony was directed toward showing that the procedures recommended by his firm and used by the Co–PRs were proper. The estates' attorneys were entitled to appear and defend against the challenges by Roberta; doing so did not violate their

duty of fairness to Roberta and the other beneficiaries.

¶ 35 Roberta also complains that the court improperly allowed Mariscal to testify as an expert. However, in response to objections about Mariscal's testimony, the court indicated that it did not deem Mariscal to be an expert witness and that it would consider the testimony for its factual content only. Thus Roberta's contention is without support in the record.

### CONCLUSION

¶ 36 The evidence supports the probate court's finding that the Co–PRs did not engage in extrinsic fraud that prevented Roberta from timely objecting to the first accounting. Accordingly, we affirm its denial of her motion to set aside the first accounting and petition to remove and surcharge the Co–PRs. We also conclude that the court did not abuse its discretion in allowing Mariscal to testify at the evidentiary hearing. The judgment is affirmed.

CONCURRING: NOEL FIDEL, Judge, and EDWARD C. VOSS, Judge.